LINCOLN BANK & TRUST COMPANY and General Motors Acceptance Corp., Appellants,

v.

James F. QUEENAN, County Clerk, Jefferson County, Kentucky, Appellee.

Court of Appeals of Kentucky.

March 10, 1961.

Robert E. Hatton, John A. Fulton, Woodward, Hobson & Fulton, Louisville, for appellants.

Charles Dobbins, County Atty., James E. Thornberry, Asst. County Atty., Louisville, for appellee.

PALMORE, Judge.

This case raises four questions concerning the recording requirements of the Uniform Commercial Code (KRS Chapter 355) as affected, vel non, by certain other statutes. They are: As a condition precedent to recording a financing statement that otherwise complies with Code § 9–402,

(1) Does KRS 382.270 require acknowledgement of the statement?

(2) Does KRS 382.330 require that the maturity date or dates of the security obligation covered by the statement be shown?

(3) Does KRS 382.675 require that motor vehicles in a dealer's inventory be registered (i. e., licensed under the provisions of KRS Chapter 186)?

(4) Must the obligation of the secured party under KRS 186.195 be satisfied? If so, the incidental question arises, do the recording requirements of the Code also apply in order to perfect the security interest?

The trial court's answer to questions (1), (2) and (3) was "no" and to both parts of question (4) was "yes." We agree.

Text material covering the philosophy and objectives of the Uniform Commercial Code is available in such abundance that we need not record any of it here. Especially apropos of the particular subject under consideration is the monograph, "Secured Transactions," by Oscar Spivack (American Law Institute, 1960).

■ The Code represents an entirely new approach in several areas of commercial law, and especially as to security transactions. Its adoption in this state signifies a legislative policy to join with other states in achieving uniformity. Code § 1–102(2) (c). The realization of this purpose demands that so far as possible the meaning of the law be gathered from the instrument itself, unfettered by anachronisms indigenous to the respective jurisdictions in which it is in force. Cf. 50 Am. Jur. 480 (Statutes, § 465). Accepting that principle, we adopt as a rule of construction that the Code is plenary and exclusive except where the legislature has clearly indicated otherwise.

Broadly speaking, a nonpossessory security interest created by written agreement of the parties may be perfected as against third parties by recording a public notice, the formal requisites of which are set forth in Code § 9–402. This notice, or financing statement, is a paper separate and apart from the security agreement itself, although a copy of the agreement may suffice as the financing statement if it is signed by both parties and meets the other requirements of § 9–402(1). § 9–402 does not require that the financing statement be acknowledged and does not require the maturity of the secured obligation to be disclosed.

Article 10 of the act adopting the Code (Chapter 77, Acts of 1958) repealed several chapters and sections of the Kentucky Revised Statutes by specific reference. However, as counsel for the intervenor General Motors Acceptance Corporation has expressed it, "the search for and express repeal of specific inconsistent statutory provisions on such a scale is a formidable and exacting task." It is inevitable that the unfolding years will witness the discovery of inconsistencies and obsolete matter that escaped initial detection and will reveal "knotty halfway related points" between pre-existing statutes and the provisions of the Code. Cf. Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference, 1958, p. 116.

KRS 382.270 and 382.330, veteran sections of the general statutes relating to conveyances and encumbrances, respectively provide (a) that no deed of trust or mortgage of real or personal property shall be valid against innocent third parties unless "acknowledged or proved according to law and lodged for record," and (b) that no deed, deed of trust or mortgage may be recorded unless it states the date and maturity of the secured obligation.

■■ It is possible by various reasoning, as counsel have ably demonstrated, to harmonize these two statutes with the provisions of the Code. But the cleanest answer is simply that neither of them can have any application to a secured transaction falling within the scope of the Code. We so hold.

With respect to maturity dates, the intent of the framers and the clear import of Code § 9–403 is that if a filed financing statement shows a maturity date beyond 5 years from the date of filing, or fails to show any maturity date, it is effective for a period of 5 years from the date of filing, subject to renewal by a continuation statement.

■ KRS 382.675, enacted in 1958 (Chapter 82, Section 11), provides as follows:

"No instrument conveying or reserving a security interest in a motor

vehicle shall be recorded until such vehicle has been properly registered. The county clerk shall record such instrument as directed in this chapter and in KRS Chapter 186."

By "Chapter" is meant Chapter 82 of the Acts of 1958, which extensively amended the provisions of KRS Chapter 186 relating to the registration and licensing of motor vehicles. KRS 186.070 specifically permits manufacturers and dealers to operate, for purposes of sale and delivery in the course of their business, motor vehicles that have not been registered. Such vehicles must, when operated on the highways of the state, bear dealer plates, which are not issued on any particular vehicle, but are issued to the dealer or manufacturer personally. To say, therefore, that a security transaction covering a motor vehicle could not be noted of record until the vehicle has been registered would have the practical effect of limiting the use of dealer plates to manufacturers and dealers who do not need to credit finance their inventories. We do not believe the legislature intended such a result and therefore conclude that KRS 382.675 does not apply to unregistered vehicles in inventory of the manufacturer or dealer for purpose of sale.

■ The last question is the most treacherous. We have in Kentucky a statute, KRS 186.195, originally enacted in 1958 (Chapter 82, § 4) to take effect at the same time as the Code on July 1, 1960, which is intended to effect the benefits of the so-called motor vehicle "certificate of title" laws prevailing in other states, but without removing the fee business from the county clerks. Instead of providing for central filing of the title document, or the central issuance of a title certificate, it makes use of the registration receipt issued by the county clerk. When the owner of a motor vehicle properly registered in this state "executes a lien thereon" he must deliver its registration receipt to the secured party, who must within 10 days deliver it, to-

gether with the "lien instrument," to the county clerk of the county in which the vehicle is registered or, as we construe subsection (3) added to KRS 186.195 by Chapter 37, Acts of 1960, if the financing statement is to be recorded in a different county, the secured party may instead deliver the registration receipt and security instrument to the county clerk of the latter county, who must accordingly notify the county clerk of the county in which the vehicle is registered. The county clerk who receives the two instruments from the secured party indicates the lien on the face of the registration receipt and mails the latter to the owner. (What he is supposed to do with the lien instrument itself the legislature evidently did not pause to consider. Presumably, however, he retains it as evidence of his authority for having endorsed the lien on the registration receipt.) The county clerk of the county in which the vehicle is registered endorses the lien on the face of his copy of the registration receipt.

Now, § 9–302(3) of the Code excludes from its recording provisions property subject to any statute of the state "which provides for central filing of, or which requires indication on a certificate of title of, such security interest in such property." Though a registration receipt is not a "certificate of title," KRS 186.195 makes it the substantial equivalent of one for purposes of security transactions after the motor vehicle has been properly registered. Therefore, does a security transaction covering a motor vehicle properly registered in this state fall under the recording requirements of § 9–302 at all, and, if so, is the perfection of the security interest in any way dependent on or subject to compliance with KRS 186.195?

There are at least three clear indications that the legislature did not intend KRS 186.195 as the means of perfecting a security interest in a motor vehicle. First, KRS 382.740 (Chapter 10, § 1, Acts of 1960) specifies that the "lien instrument" mentioned in KRS 186.195 shall be filed "in

the same manner as financing statements are required to be filed by the Uniform Commercial Code." (In this connection, the separate use of the two expressions in the same legislation may indicate an intent that the lien instrument itself be recorded, but it is not clear, and in the interest of uniformity we concur with the trial court that a financing statement sufficient under Code § 9–402 is a "lien instrument" within the intendment of KRS 186.195 and 382.-740, though not so otherwise.) Secondly, KRS 382.770 (Chapter 13, § 1, Acts of 1960) provides that if the collateral covered by "the financing statement required by Section 9–402 of the Code" is an automobile or motor truck, and is "consumer goods" as defined by Code § 9–109(1), the make, model, year model, and motor number or identification number shall be given. Thirdly, subsection (3) of KRS 186.195, enacted as § 2(3), Chapter 37, Acts of 1960, and not theretofore a part of the law, recognizes the recordability of notice in a different county from the one in which the vehicle may happen to be registered.

We conclude, therefore, and the parties substantially agree, that in spite of Code § 9–302(3) vehicles to which KRS 186.195 applies are not removed from the operation of the Code.

Counsel for the intervenor strongly urges, however, that KRS 186.195 is an independent police measure in no way related to perfection of the security interest pursuant to the Code. And certainly it is true that nowhere does the law say that a secured party may not perfect his interest under the Code without complying with KRS 186.195. On the other hand, the complete absence of any penalty for non-compliance with KRS 186.195 (though a penalty is provided for *late* compliance) appears too conspicuous to be an accident. The logical explanation is that the legislature relied on some other persuasive force, namely, that otherwise the secured party would be unable to record his financing statement.

KRS 186.195 complements the recording provisions of the Code. A prospective buyer or lender has two sources of protective notice, to one of which he may have easier access than to the other. Yet the secured party's problem is not in any way made more difficult. Nor is the commerce of credit financing impeded. Since the law says that the secured party must do the things required by KRS 186.195 anyway, we see no reason, even of convenience, why he should object to doing the whole thing at once. We believe that was the manifest desire of the legislature, and we so construe it.

Continuing this aspect of the case to its conclusion, it is our opinion that although it is the filing of the financing statement that perfects the interest of the secured creditor, independently of the execution by the various parties and county clerks of their duties under KRS 186.195, the county clerk may refuse to record a financing statement in the absence of compliance with KRS 186.195.

There is one other facet of the matter under discussion that is not strictly necessary to a decision of the controversy presented by the pleadings and is not fully discussed in the briefs, but which we feel called upon to consider because it is raised by reference in the opinion and judgment of the trial court to "used motor vehicles" in a dealer's inventory.

■ We may judicially notice that the inventory of any dealer in motor vehicles is likely to include used vehicles, some or all of which are registered in this state. Literally, therefore, KRS 186.195 would apply to the registered vehicles. However, one of the important reforms effected by the Code in the field of security financing is the concept of a floating lien on shifting collateral, whereby a security interest may be created by one agreement and perfected by one notice covering a changing inventory. Each item of the inventory is automatically freed of the security interest as it goes into the hands of a buyer in the

ordinary course of business. Code § 9–307 (1). KRS 186.195 is incompatible with such an arrangement and, in any event, is not susceptible of practicable enforcement by the clerk where the financing statement covers an inventory of vehicles that are not required by the Code to be identified individually. Therefore, it is our opinion that compliance with KRS 186.195 may not be required by the clerk as a condition precedent to the filing of a financing statement covering a dealer's inventory or segment thereof as such. We are fortified in this conclusion by the fact that KRS 382.-770, requiring certain specific data in a financing statement relating to automobiles, trucks, and other property normally bearing serial numbers, is expressly confined to property in the hands of a consumer.

The judgment is affirmed.

MONTGOMERY, J., dissenting.

MONTGOMERY, Judge (dissenting).

The effect of the majority opinion is to hold that KRS 382.270 and 382.330 have been repealed as to liens in the motor vehicle branch of the personal property financing field. The point of this dissent is that it is not believed that such repeal was ever contemplated or intended by the Legislature.

It is pointed out in the majority opinion that the Act adopting the Uniform Commercial Code "repealed several chapters and sections of the Kentucky Revised Statutes by specific reference." Specifically, KRS 382.680, 690, 700, 710, and 720 of Kentucky Revised Statutes Chapter 382, of which KRS 382.270 and 382.330 are a part, were repealed. It is hard to believe that the drafters of the Uniform Commercial Code legislation would have overlooked the two sections mentioned if it had been intended that they should be repealed.

The usual catch-all repeal section was omitted. Thus, there is no repeal of the two sections by specific provisions of the Act. This leaves repeal by implication as the only possibility.

Repeal by implication is not favored. Jefferson County Fiscal Court v. Grauman, 281 Ky. 608, 136 S.W.2d 1102. An act will not be construed as repealing a prior act unless such an intention clearly appears or unless the repugnancy is so clear as to admit of no other reasonable construction. Demunbrun v. Browning, 311 Ky. 71, 223 S.W. 2d 372; Benjamin v. Goff, 314 Ky. 639, 236 S.W.2d 905. The rule is that a general statute is not to be construed as repealing a prior particular statute unless there is some express reference to the previous statute on the subject or unless the two statutes are necessarily inconsistent. Commonwealth v. Cain, 14 Bush. 525, 77 Ky. 525; City of Louisville v. Louisville Water Company, 105 Ky. 754, 49 S.W. 766, 20 Ky. Law Rep. 1529; Mauget v. Plummer, 107 Ky. 41, 52 S.W. 844, 21 Ky.Law Rep. 641; Raubold v. Commonwealth, 54 S.W. 17, 21 Ky.Law Rep. 1125. Under the principles embodied in these decisions, KRS 382.270 and 382.330 cannot be considered as having been repealed and should be held to be in full force and effect.

I am fortified in this conclusion by the realization that the worthy purposes of these two statutes are rendered no less worthy by the enactment of the Uniform Commercial Code. Further, the execution by acknowledgement requirement in similar instruments has been retained by enactments of the 1958 and 1960 General Assemblies which evidence legislative recognition of its worthwhile purpose. See KRS 186.195(4) (a) and 382.340. The first named statute was enacted by the same General Assembly that enacted the Uniform Commercial Code and was re-enacted by the succeeding General Assembly, thus showing a legislative intent, if there be such a thing, that it is not repugnant to the provisions of the Uniform Commercial Code. It is concluded, therefore, that the worthy purposes

of KRS 382.270 and 382.330 are not repugnant to the provisions of the Uniform Commercial Code, that the statutes are in harmony with the provisions of the Code, and that the benefit derived by a small segment of our society does not justify their repeal.