**HERINGTON LIVESTOCK AUCTION COMPANY, Appellant,**

v.

**William O. VERSCHOOR, William E. Verschoor, Jr., and James J. Verschoor, d/b/a Wood Bros., and Wood Bros., a Partnership, Appellees.**

**No. 53961.**

Supreme Court of Iowa.

Sept. 2, 1970.

Crary, Huff & Yates, of Sioux City, for appellant.

Wilson, Rhinehart & Bikakis, of Sioux City, for appellees.

BECKER, Justice.

Plaintiff's action against defendant is for conversion of 84 head of cattle sold by plaintiff to Mearl H. Bergeson. The conversion is alleged to have occurred when defendant as agent for Bergeson sold the cattle on the open market. Trial to jury resulted in verdict for plaintiff in the sum of $11,788.26. Post trial motion by defendant for judgment notwithstanding the

verdict was sustained, the verdict and judgment thereon was set aside and plaintiff's petition was dismissed. Plaintiff appeals. We affirm.

The operative facts are relatively simple and there is little dispute about them. On December 7, 1967, plaintiff Herington Livestock Auction Company operated a livestock auction barn at Herington, Kansas. Mearl Bergeson was a cattle speculator who purchased cattle at livestock auctions conducted by plaintiff. At these auctions the customary procedure was to pay for the cattle by check immediately after the purchase and to receive an invoice form which stated on its face: "The purchaser agrees that title of stock listed above shall be retained by us until check or draft in payment of same is paid. After animals leave sale premises responsibility must be assumed by the purchaser."

The cattle in question were not purchased at the usual auction but auction invoices were used. This purchase was made by telephone on the evening of December 7, 1967. Bergeson called Clarence Wendt, one of the partners of plaintiff company, discussed the availability of cattle not sold that day at the auction and agreed to purchase the 84 head of cattle. Wendt agreed to sell the cattle to Bergeson for $11,330.91 and to ship them in the name of Charles Larson to defendant Wood Bros., a livestock commission firm located at Sioux City, Iowa.[1] Wendt says Bergeson was to pay for the cattle by check mailed the next day. Bergeson says the cattle were to be paid for by check when he received the invoices.

At any rate, Wendt issued the shipping order to the trucker the same night. The following morning he prepared and forwarded three invoices covering the 84 head of cattle. The invoices were dated December 7, 1967, the date of the telephone con-

1. Bergeson testified he used the fictitious name to confuse competitors. We attach no weight to this circumstance. Both plaintiff and defendant knew Bergeson's custom in this regard, had dealt with him on this basis before and neither was confused or prejudiced by the practice.

versation. The shipping ticket was dated December 9, 1967 and reflect delivery to Wood Brothers on that date.

Defendant Wood Brothers, acting on Bergeson's orders sold the cattle on or before December 11, 1967, issued its accounting for the sale and its check for $10,851.-75 on that date to Bergeson.

Bergeson failed to send a check to plaintiff. Inquiry was made concerning nonpayment about two weeks after the December 7, 1967 phone call. After several more telephone calls it turned out Bergeson did not have the money to pay plaintiff and this action was started. At the time of sale to Bergeson, Wendt thought Bergeson was bonded under the Stockyard and Packer Act. He did not know Bergeson's bond had been cancelled the previous July.

Plaintiff states the issue: Had title to the cattle passed from plaintiff to Bergeson at the time defendant, as Bergeson's agent, sold the cattle on the open market? Defendant states the issue more narrowly: Was the court correct in entering judgment notwithstanding the verdict?

I. This case is controlled by the Uniform Commercial Code, Iowa Code, 1966, chapter 554, adopted by the 61st General Assembly, approved April 22, 1965, effective July 4, 1966. Section 554.1102(2) states:

"2. Underlying purposes and policies of this chapter are:

"a. to simplify, clarify and modernize the law governing commercial transactions;

"b. to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

"c. to make uniform the law among the various jurisdictions."

A proper approach to interpretation of this new monumental statute is well stated in Lincoln Bank & Trust Company v. Queenan (Kentucky, 1961), 344 S.W.2d 383, 385:

"The Code represents an entirely new approach in several areas of commercial law, and especially as to security transactions. Its adoption in this state signifies a legislative policy to join with other states in achieving uniformity. Code § 1–102 (2) (c). The realization of this purpose demands that so far as possible the meaning of the law be gathered from the instrument itself, unfettered by anachronisms indigenous to the respective jurisdictions in which it is in force. Cf. 50 Am.Jur. 480 (Statutes, § 465). Accepting that principle, we adopt as a rule of construction that the Code is plenary and exclusive except where the legislature has clearly indicated otherwise."

II. Plaintiff claims it is titleholder as to the cattle by virtue of an explicit agreement between it as seller and Bergeson as buyer. Therefore plaintiff's property was converted when, as agent for Bergeson, defendant sold the cattle on the open market.

Absent the claimed explicit agreement it seems clear plaintiff's interest in the cattle, if any, was at most as a secured creditor. Plaintiff did not comply with Article 9 on the Act dealing with secured transactions. Unless it can show continued ownership under the explicit agreement theory it has no protection. The right of parties to an agreement to vary the terms and conditions of the new statute, and any limitations to such right, are of first importance. The Act itself anticipates the problem and deals with it.

Section 554.1102(3) states: "The effect of provisions of this chapter may be varied by agreement, *except as otherwise provided in this chapter * * *.*" (Emphasis supplied.)

The Uniform Commercial Code comment in connection with this last provision regarding variance by agreement notes the purpose to preserve freedom of contract and allow for the evolutionary growth of commercial practices. But it also notes that

whether such variance by agreement may affect third parties depends upon the specific provisions of the Act:

"* * *; the effect of an agreement on the rights of third parties is left to specific provisions of this Act and to supplementary principles applicable under the next section. The rights of third parties under Section 9–301 when a security interest is unperfected, for example, cannot be destroyed by a clause in the security agreement." (loc. cit. 35 Iowa Code Annotated, section 554.1102, page 10; 1 Uniform Laws Annotated, Uniform Commercial Code, section 1–102, Official Comment, page 11.)

■ Unless displaced by particular provisions of the Act general principles of law and equity supplement its provisions. Section 554.1103 of the Code. The rights of a third party ordinarily cannot be adversely varied by an agreement to which he is not a party or by which he is not otherwise bound. 17A C.J.S. Contracts 520, page 999; Kahn v. J. A. Prahl Contracting & Bldg. Co. (Mo., 1967), 414 S.W.2d 269, 278.

III. The interest in the cattle now claimed by plaintiff is a security interest as defined in the Act. Section 554.1201(37) reads in pertinent part:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. *The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 554.2401) is limited in effect to a reservation of a 'security interest'. * * *.*" (Emphasis supplied).

Section 554.2401 then becomes pertinent. It provides in part: *"Passing of title—reservation for security—limited application of this section.* Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. *Insofar as situations are not covered by the other provisions of this Article and matters concerning title become material the following rules apply*:

"1. Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 554.2501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this Chapter. *Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.*

"2. Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading * * *." (Emphasis supplied.)

■ Plaintiff relies on the claimed explicit agreement which is contrary to the rules set out in section 554.2401(2). In doing so it ignores the sentence in the preceding section, "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." It also ignores the similar sentence in the statutory definition of security interest found at section 554.1201 (37). The secured transactions provisions of the Act cannot be varied by private agreement between the parties. Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc. (No. 1) (Pa., 1957), 12 Dist. & Pa.Co.R.2d 351.

IV. That this result was intended by the framers of the Act is clear from Uniform Commercial Code Comment, 35 Iowa Code Annotated, 554.2401, pages 402, 403; 1 Uniform Laws Annotated, Uniform Commercial Code, section 2–401, page 296, where it said:

"1. This Article deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale and not in terms of whether or not 'title' to the goods has passed. That the rules of this section in no way alter the rights of either the buyer, seller or third parties declared elsewhere in the Article is made clear by the preamble of this section. * * *

"3. The 'special property' of the buyer in goods identified to the contract is excluded from the definition of 'security interest'; its incidents are defined in provisions of this Article such as those on the rights of the seller's creditors, on good faith purchase, on the buyer's right to goods on the seller's insolvency, and on the buyer's right to specific performance or replevin."

To effectively reserve his rights, seller must proceed under Article 9 of the Act, section 554.9101 et seq., dealing with secured transactions. The main purpose of Article 9 is to bring all consensual security interests in personal property and fixtures under this Article. There are certain specified exclusions not applicable here. See Pocket Part, 35 Iowa Code Annotated, page 7.

V. Thus for any purposes controlled by explicit agreement between the parties or by provisions of the Act which make passage of title a material factor, intent of the parties is relevant. But for purposes of determination of when an interest becomes a security interest, the prior metaphysical concept of title has been abandoned and analysis of the steps taken by the parties is substituted.[2]

Cases cited by plaintiff such as Silver v. Sloop Silver Cloud (N.Y.D.C., 1966), 259 F.Supp. 187 and Knotts v. Safeco Insurance Co., 78 N.M. 395, 432 P.2d 106 (1967) are not in point. They involve the "special property" in the buyer which is referred to by the Code Commission's comment and do not deal with "security interest" which is specially treated in Uniform Commercial Code.

Prior Iowa cases inconsistent with the Uniform Commercial Code as adopted in Iowa are no longer controlling insofar as such inconsistencies are apparent. Enough has been said to indicate that title, intent and time title passes from buyer to seller will be relevant to many cases decided under Uniform Commercial Code. To this extent our prior holdings, which do not otherwise countervene the statute are controlling. But where, as here, the new Act makes title and intent irrelevant, such authority must give way to the statute.

The only prior Iowa case dealing with security interest under Uniform Commercial Code is Kaiser Aluminum & Chemical Sales, Inc. v. Hurst (Iowa, 1970), 176 N. W.2d 166 (Filed April 7, 1970). This case

2. See 30 North Dakota L.Rev. 211, 213: "The proposed Uniform Commercial Code attempts to cover completely the law of sales. The rules therein concerning the sale of chattels are based directly on the contract of sale and the action taken under it, without resorting to the idea that the time of passing of title is the determining factor. The purpose of these rules, as the framers point out, '. . . is to avoid making practical issues between practical men turn upon the location of an intangible something, the passing of which no man can prove by evidence and to susbtitute for such abstractions proof of words and actions of a tangible character.' The motivation for the almost complete avoidance of the 'title theory' in the Uniform Commercial Code has been aptly phrased in a reference to the 'title theory' of existing law: 'Nobody ever saw a chattel's title. Its location in the sales cases is not discovered, but created, often ad hoc.'" Cf. 53 Iowa L.Rev. 1209, 1265.

turns on a narrower point but there too the seller was denied relief for failure to comply with the "security transaction" requirements of the new law.

VI. Plaintiff has treated defendant as a third party under chapter 554.2401, U.C.C. We have decided the case as thus presented. Birmingham v. Rice Bros. (1947), 238 Iowa 410, 26 N.W.2d 39, 2 A. L.R.2d 1108, was not cited by either party nor were the Agency problems inherent therein discussed. This being the case we express no opinion on the continued validity of the Birmingham case under the facts presented here.

Since the interest retained by plaintiff was a security interest and Article 9, U.C. C. was not complied with, the trial court was right in setting aside the judgment based on the jury verdict and entering judgment of dismissal.

Affirmed.

All Justices concur, except RAWLINGS, J., who takes no part.