**INTAMIN, INC., Plaintiff,**

**v.**

**FIGLEY–WRIGHT CONTRACTORS, INC., et al., Defendants.**

**No. 83 C 9387.**

United States District Court, N.D. Illinois, E.D.

Sept. 20, 1984.

---

Carlton Fisher, Hinshaw, Culbertson, Moelmann, Hoban & Fuller; Chicago, Ill., for plaintiff.

Thomas F. Tobin, Michael J. Wagner, Baker & McKenzie, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Intamin, Inc. ("Intamin") has sued Figley-Wright Contractors, Inc. ("Figley-Wright") as principal and James Figley and Leonard Wright as guarantors in a five-count Complaint, Counts II and IV of which sound in the Uniform Commercial Code ("UCC"). Defendants have moved to dismiss Counts II and IV under Fed.R. Civ.P. ("Rule") 12(b)(6) as failing to state a cause of action. For the reasons briefly stated in this memorandum opinion and order, the motion is denied.

 Absent a contractual choice of law provision, the test for UCC applicability under Illinois law is whether the dominant aspect of a mixed goods and services contract is its sale-of-goods component or its services component. If it is the former, the UCC applies to the contract. *WICO Corp. v. Willis Industries*, 567 F.Supp. 352, 355 (N.D.Ill.1983) and authorities cited there. Under that standard the UCC would not apply here, for Figley-Wright rendered only *services*—though its services were to "perform all Work required to construct" a tangible product (a custom-built roller coaster) and its compensation was measured in part by the cost of that construction.

But the parties here deliberately changed the ground rules: They chose to include as Paragraph 14(d) of the Intamin-Figley-Wright contract a specific incorporation of the UCC:

By agreement of the parties hereto, in the event that any action, suit or proceeding of any kind be brought hereunder, the terms and provisions of this Agreement shall be construed and enforced in accordance with the laws of the State of Illinois and the Uniform Commercial Code of that State except that to the extent any term or provision(s) of this Agreement vary, alter or contradict the Uniform Commercial Code, the terms and/or provisions of this Agreement shall prevail.

Figley-Wright responds in its counsel's September 13 letter "that parties may not agree to be governed by a substantive body of law which does not bear an appropriate relationship to the underlying transaction." For that proposition it cites *R & L Grain Co. v. Chicago Eastern Corp.*, 531 F.Supp. 201, 206 (N.D.Ill.1981); *Mell v. Goodbody & Co.*, 10 Ill.App.3d 809, 812–13, 295 N.E.2d 97, 99 (1st Dist.1973); *In re Automated Bookbinding Services, Inc.*, 336 F.Supp. 1128, 1132 (D.Md.1972); *Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316, 322–23 (1975); and *Herington Livestock Auction Co. v. Verschoor*, 179 N.W.2d 491, 493–94 (Iowa 1970).

 There is good reason to be suspicious of the contention stated as baldly as Figley-Wright puts it. Where two commercial concerns enter into a major contract (not one of adhesion, but representing at least substantially equal bargaining power), no reason would appear to compel the disregard of their arms-length bargain that a particular law applied to their agreements. Figley-Wright has given no hint of, nor does this Court perceive, any strong public policy that would override the fundamental notion of freedom of contract. Why should such parties not have the right to define their own legal standards, and to look to a court to honor that choice if one of the parties breaks its promise?

None of the five cases cited by Figley-Wright even purports to decide that question. Three of them (*Automated Bookbinding*, *Intraworld Industries* and *Herington Livestock*) deal with the very different (and obvious) principle that a contractual choice of law by two parties cannot automatically bind third parties such as

creditors. As for the other two (*R & L Grain* and *Mell*), they do not announce a rule of law, but instead simply *apply* UCC § 1–105(1):

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state.

None of the cases therefore deals with whether parties could choose a jurisdiction not having an "appropriate relation" to their transaction and would then be bound—as between themselves—by that choice.

On that score Figley-Wright's counsel were duty-bound to opposing counsel and this Court to indicate that the UCC *itself* indicates an affirmative answer to that very question. As the official comment to UCC § 1–105 states (emphasis added):

> In general, the test of "reasonable relation" is similar to that laid down by the Supreme Court in *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927). Ordinarily the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs. *But an agreement as to choice of law may sometimes take effect as a shorthand expression of the intent of the parties as to matters governed by their agreement, even though the transaction has no significant contact with the jurisdiction chosen.*

In plain English that would permit the parties to apply the Illinois UCC even without a "reasonable relation" to their deal.

But this Court need not decide that interesting question for the current motion. It would be wholly academic here. Though it is true Figley-Wright was rendering services, the notion that the "transaction [did not] bear [ ] a reasonable relation to this state" (the Section 1–105(1) standard) is absurd. That is conclusively demonstrated both by common sense (including the common meaning of the quoted statutory language) and by a mere reading of the portion of the quoted official comment immediately preceding the underscored part. *All* of the "performance of the contract"—the construction Figley-Wright contracted to supervise—occurred in Illinois. And if that multi-million dollar activity does not bear a "reasonable relation" to this state it is difficult to conceive what could—or to look at the obverse side of the coin, to see what other state might have a more "reasonable relation."

Thus whether viewed in freedom-of-contract terms or (less accurately as a conceptual matter) as a question of statutory construction, Figley-Wright's Rule 12(b)(6) motion targeting Complaint Counts II and IV is wholly without foundation. Defendants are ordered to answer both those counts on or before October 1, 1984. Accordingly the status call now set for September 25 is reset to October 23, 1984 at 9 a.m.