**BRUCE WALTERS FORD LINCOLN KIA, Appellant**

v.

**KENTUCKY MOTOR VEHICLE COMMISSION, Appellee**

**NO. 2016-CA-000873-MR**

Court of Appeals of Kentucky.

AUGUST 11, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Clayton B. Patrick, Frankfort, Kentucky.

BRIEF FOR APPELLEE: Trevor L. Earl, Louisville, Kentucky.

BEFORE: COMBS, JOHNSON AND J. LAMBERT, JUDGES.

## OPINION

COMBS, JUDGE:

This is an appeal from an order of the Franklin Circuit Court affirming a decision of the Kentucky Motor Vehicle Commission. The Commission concluded that Bruce Walters Ford Lincoln Kia (Bruce Walters Ford) made improper use of a dealer license plate in violation of provisions of KRS[1] 186.070 and its pertinent implementing regulations; as a consequence, it imposed a fine upon the dealership. Based upon our review of the record and the applicable law, we reverse and remand.

Bruce Walters Ford is a licensed dealer of new and used motor vehicles. It provides sales, service, and collision repair for automobiles. On September 4, 2014, the Commission's inspector visited the dealership in Pikeville. The inspector observed a light-duty Ford pickup on the lot that appeared to be a parts truck. The lettering on its side indicated that the vehicle was affiliated with "Walters Collision Center." The truck bore a dealer plate, but it did not display a Federal Trade Commission (FTC) Buyer's Guide sticker. On September 5, 2014, Walters was issued an administrative citation for violation of the provisions of KRS 186.070 and 601 KAR[2] 9:220 for its alleged misuse of a dealer plate.

By agreement of the parties, the matter was submitted to the Commission's hearing officer upon written briefs, photographs of the pickup truck, and the affidavit of Jim Reynolds, owner of Bruce Walters Ford. In his affidavit, Jim Reynolds indicated that he served as the executive vice president of the dealership. He explained that the Ford pickup truck was owned by Bruce Walters Ford and was "used for a multitude of services and activities for the necessary operation in furtherance of [the dealership's] business during the dealership's business hours" by the employees of the dealership. Reynolds attested that the pickup truck was part of the dealership's inventory and was subject to sale to any willing buyer. He stated that the truck originally had the required FTC Buyer's Guide sticker displayed in its window. The sticker had been temporarily removed as of the day of the alleged violation.

On December 30, 2014, pursuant to the provisions of KRS 13B.110, the hearing officer issued findings of fact, conclusions of law, and a recommended order. From the evidence submitted, the hearing officer found that the pickup truck was used only by employees of the dealership in furtherance of the dealer's business and only during the dealership's business hours. With

---

1. Kentucky Revised Statutes.

2. Kentucky Administrative Regulations.

respect to the FTC Buyer's Guide sticker, the hearing officer found that the sticker had been temporarily removed on the date the inspection occurred. The hearing officer concluded that the dealer plate had not been misused, and he recommended that the citation be dismissed.

Pursuant to the provisions of KRS 13B.120(2), the final order of the Commission was issued on February 13, 2015. The Commission accepted many of its hearing officer's findings of fact. However, in additional findings of fact, the Commission rejected the assertion contained in the affidavit submitted by Reynolds that the pickup remained part of the sales inventory of Bruce Walters Ford and was available for purchase by a member of the public. The Commission found that the lettering on the truck indicated that it was a company truck—not inventory. It noted that there was no pricing information or anything else on the truck to indicate that it was for sale and that it lacked the FTC sticker that is required for all used vehicles offered for sale to the public at a dealership of this size. The Commission concluded that the truck was not being used by the dealership with the intent of offering or advertising the vehicle for sale to the public and that the dealership had failed to display the necessary FTC sticker on the truck. The Commission concluded that the dealer plate had been misused and fined the dealership $100 for these violations. Bruce Walters Ford petitioned the circuit court for judicial review of the Commission's order.

Upon its review, the Franklin Circuit Court concluded that the Commission's findings were supported by substantial evidence. It also concluded that the Commission had properly applied the law when it imposed the fine of $100 for the violations. Its Order was entered on May 26, 2016. This appeal followed.

On appeal, Bruce Walters Ford argues: (1) that the circuit court erred by failing to remand the Commission's order since its factual findings were not supported by the evidence and (2) that the Commission erred in its application of the law to the facts. We agree.

■■■ The standard of review for administrative appeals is well established. "If the findings of fact are supported by substantial evidence ... then they must be accepted as binding" even where there is conflicting evidence in the record. *Kentucky Unemployment Ins. Comm'n. v. Cecil*, 381 S.W.3d 238, 245 (Ky. 2012). Substantial evidence is "evidence which has sufficient probative value to induce conviction in the minds of reasonable people." *Id.* at 245. If the reviewing court concludes that the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed. *Id.* at 246.

The citation issued to Bruce Walters Ford alleged:

A violation of KRS 186.070 and 601 KAR 9:220, improper use of a dealer plate, specifically on or before September 5, 2014, the dealership provided a dealer plate X6-369L upon a vehicle being used as a parts truck.

601 KAR 9:220 defines "misuse" of a dealer plate to mean its use "in a manner unauthorized by KRS 186.070 or Section 3 of this administrative regulation."

KRS 186.070(1)(c) provides that a motor vehicle bearing dealer's plates may be used on the highways only by specified drivers, including: "[a] licensed dealer, bona fide salesman, or employee of the dealer...." An "employee" refers to one "who is actively engaged in and devotes a substantial part of his time to the conduct of the dealer business." KRS 186.070(1)(e). The evidence of record indicates that the

pickup truck bearing the disputed dealer's plates was used by employees of the dealership.

KRS 186.070(1)(f) provides that a used motor vehicle bearing a dealer plate must have a "Federal Trade Commission buyer's guide sticker attached to the vehicle." However, the Federal Trade Commission advises dealers that a buyer's guide must be posted upon a vehicle only when a vehicle is offered for sale to a consumer. *See* 16 Code of Federal Regulations § 455.2. The Kentucky Motor Vehicle Commission's dealer handbook advises dealers that the FTC permits the sticker to be displayed on or in the vehicle. It also advises its dealers that the sticker may be removed while the vehicle is being driven. The evidence in the record indicates that the vehicle originally displayed the required FTC sticker; that it had been temporarily removed; and that it had been promptly restored to view. Because the citation did not provide the date and time upon which the alleged violation occurred, the dealership was unable to account for the temporary removal of the sticker.

601 KAR 9:220 Sec. 3, entitled "Use of Dealer Plates," provides, in part, as follows:

(2) *A bona fide employee of the dealer* who is not a licensed salesman shall only operate a motor vehicle bearing a dealer plate:

(a) When testing the mechanical operation of the vehicle;

(b) When transporting vehicles to or from the dealer's place of business; or

(c) *For the necessary operation in furtherance of the dealer's business during the dealer's business hours.*

(Emphasis added.) In contrast, with respect to the use by *a licensed dealer or bona fide dealer's salesman* of a motor vehicle bearing a dealer plate upon the highways 601 KAR 9:220 Sec. 3(1) provides

that the use *may be at any time* "*with the intent of offering or advertising the vehicle for sale to the public.*" (Emphasis added).

Bruce Walters Ford contends that the Commission erred by ignoring a regulatory provision that was properly applied by its hearing officer. That regulation permits the operation of a motor vehicle bearing a dealer plate by a dealer employee "for the necessary operation and furtherance of the dealer's business." However, the Commission argues that it did not err by construing the statutory framework and regulation to require **any use** of a motor vehicle bearing a dealer's plate to be confined to those vehicles being held out to the public for sale or delivery. It contends that the undisputed evidence in the case indicates that the Ford pickup truck was not being offered for sale to the public and argues that, as a result, **absolutely no use of the vehicle** by any driver was permitted. Our research reveals that the Commission's position is unsupported by the provisions of the statute and pertinent regulations.

The Commission contends that the underlying purpose of the dealer plate statute is to allow motor vehicle dealers to operate vehicles on the highways for certain purposes—but only where those vehicles are part of the dealer's inventory and are being held and offered for resale. However, it concedes that neither the statute nor the regulation refers to "inventory." Nevertheless, it insists that "it is clear from references [in the statute] to a vehicle being delivered to the dealer from a manufacturer, to the vehicle being demonstrated, and to the vehicle being used on a test drive, that dealer plates are to be used only on inventory and not on non-inventory vehicles owned by a dealership for business purposes."

As a basis for its assertion, the Commission relies, in part, upon language included

in *Lincoln Bank & Trust Co. v. Queenan*, 344 S.W.2d 383 (Ky. 1961). In that case, our highest court considered questions concerning the recording requirements of the Uniform Commercial Code in relation to other statutes—including the provisions of KRS Chapter 186 relating to the registration and licensing of motor vehicles. The court observed as follows:

KRS 186.070 specifically permits manufacturers and dealers to operate, *for purposes of sale and delivery in the course of their business*, motor vehicles that have not been registered. Such vehicles must, when operated on the highways of the state, bear dealer plates, which are not issued on any particular vehicle, but are issued to the dealer or manufacturer personally.

(Emphasis added.) 344 S.W.2d at 386. After some analysis (not pertinent here), the court concluded that the provisions of our statutes related to the reservation of a security interest in a motor vehicle did not apply to "unregistered vehicles in inventory of the manufacturer or dealer for purpose of sale." *Id.* Based on this language, the Commission contends that the provisions of KRS 186.070(1) authorize the use of vehicles bearing dealer's plates *only* when the vehicles are held for resale. It contends that there is no credible evidence in this case to support a finding that the pickup truck was being offered for resale.

*Lincoln Bank & Trust Co.* was rendered in 1961. At that time, the provisions of KRS 186.070(1) provided as follows:

A motor vehicle bearing dealers plates may be used only by a member of the firm registered or by a bona fide salesman or employee of the firm *for any purposes reasonably connected with the sale or demonstration for sale and delivery of the dealer's motor vehicles*, or by any manufacturer or dealer licensed as provided above in transporting any motor vehicle over the highways of this state to his place of retail business from a manufacturer or wholesale dealer in motor vehicles . . . .

(Emphasis added.) Thereafter, the provisions of KRS 186.070(1) were amended to read: "a motor vehicle bearing dealer's plates may be used on the highways by the licensed dealer or by a bona fide salesman or employee of the dealer at all times . . . ." (Emphasis added.) The amended version of KRS 186.070(1) plainly removed the purpose-oriented restrictions that previously had pertained to the use of motor vehicles bearing dealer plates.

Similarly, the current provisions of KRS 186.070 omit the purpose-oriented restriction on the use of motor vehicles bearing dealer's plates. Instead, the text of the administrative regulation restricts the use of dealer plates. 601 KAR 9:220, Section 3(1), reinstated the limitation of the use of a motor vehicle bearing a dealer plate by a licensed dealer or *bona fide* salesman of the dealer. It couples and limits the motor vehicle's use to the dealer's or salesman's "intent of offering or advertising the vehicle for sale to the public."

However, no such intent is required when a *bona fide employee* of the dealer (who is specifically not a licensed salesman—per the provisions of 601 KAR 9:220, Section 3(2)) operates a motor vehicle bearing a dealer plate. A *bona fide* employee may operate the vehicle when he is testing its mechanical operations, 601 KAR 9:220 Section 3(2)(a); transporting it to or from the dealer's place of business, 601 KAR 9:220 Section 3(2)(b); or *for the necessary operation in furtherance of the dealer's business*, 601 KAR 9:220 Section 3(2)(c). Again, the record shows unequivocally that the pickup truck was in use by a dealership employee for the necessary operation and in furtherance of the dealer's business.

The Commission contends that an interpretation of the regulation permitting a dealership employee to use a vehicle bearing a dealer's plate for any purpose "in furtherance of the dealer's business"—without some further qualification—is nonsensical because it renders superfluous the preceding limitations concerning the employees' use of the dealer's vehicles. However, the broad use of the vehicle authorized in the final phrase of this part of the regulation is specifically confined to the dealer's business hours. Since the preceding provisions pertain to specific uses of the dealer's vehicle and contain no such time restriction, we fail to see how the final provision can be read to be superfluous or contradictory.

Finally, the Commission contends that the failure of the dealership to have the necessary FTC Buyer's Guide sticker prominently displayed on the pickup at the time the photograph was taken is *prima facie* evidence of a violation of the statute and regulations. Again, we disagree.

The FTC regulations and the Commission's own guidelines to its dealers plainly permit the buyer's guide to be temporarily removed and promptly replaced. There is no evidence of record to support a finding that the buyer's guide was missing from the pickup truck for a reason not authorized by the FTC or the Commission. And it was indeed promptly replaced.

█ Read together, as they must be, the statutes and administrative regulations pertaining to dealer plates permit unregistered vehicles to be operated on Kentucky's highways only by specified persons, for limited purposes, and, in some instances, for limited periods. When vehicles bearing dealer plates are operated by non-salesperson dealer employees, operation of the vehicles is limited to testing the mechanical operation of the vehicle; transport of the vehicle to or from the dealer's place of business. And, where the vehicle's use is expanded to include furtherance of some other of the dealer's business, its operation is also limited to the dealer's business hours. Despite the Commission's contention, there is no restriction that a non-salesperson employee may use the vehicle only with the intent of offering or advertising the vehicle for sale to the public. Consequently, the rule of law was incorrectly applied to the only facts which were supported by substantial evidence. The final order of the agency must be reversed.

Based upon the foregoing, the order of the Franklin Circuit Court is reversed and remanded for entry of an order consistent with this opinion.

ALL CONCUR.