EDWARD MCALLISTER, Appellant, *v.* WILLIAM SMITH *et al.,* Appellees.

### APPEAL FROM WILL.

Any rate of interest which is authorized by the law of the place where a contract is made, or of the place where it is to be performed or paid, will be recognized and enforced in the courts of other governments, whose laws would otherwise make such rates of interest usurious.

When a note is made payable in a particular locality, it will be presumed that the parties intended to adopt the laws of that locality in reference to the rate of interest.

A plea which avers that a bill of exchange was drawn to a bank in Illinois, made payable in New York, with express reference to the laws of New York, but bearing twelve per cent. interest, besides the price of exchange between the two places, and was therefore void by the statutes of New York setting them out, is not an immaterial plea, as such a plea, if true, presents a good defence to a suit on the bill.

While the court will not administer the penal exactions of a foreign law by enforcing forfeitures, it will, when a contract is void by the law of the place where it is made, hold it to be void here; although the same contract, had it been made here, would be held valid.

A notarial certificate of protest is not of itself evidence of that fact.

The law of evidence of this State will be enforced when a plea of usury is set up as a defence, so far as to permit the party pleading it to give testimony in its support.

THE plaintiffs below brought this action, which is assumpsit, against the defendant as the acceptor of five several bills of exchange. The declaration contains five special counts, and the common counts with copies of the bills set out.

The first count is upon a bill of exchange drawn by McAllister & Co., bearing date the 2nd day of September, A. D. 1854, upon the defendant below, for the sum of two thousand dollars, payable to the order of the drawers, at the Merchants' and Drovers' Bank of Illinois, ten days after date, accepted by the defendant and indorsed by the drawers to the plaintiffs.

The second count is upon a bill of exchange, drawn by McAllister & Co., bearing date the 5th day of September, 1854, upon the defendant, for the sum of one thousand dollars, payable to the order of the drawers, at the office of Wadsworth and Sheldon, in the city and State of New York, sixty days after date, accepted by the defendant, and indorsed by the drawers to the plaintiffs.

The third count is upon a bill drawn by McAllister, bearing date the 7th day of September, 1854, upon the defendant, for the sum of one thousand dollars, and accepted by the defendant, payable at the office of Messrs. Wadsworth and Sheldon, New York, to the order of the drawers, sixty days after date, and indorsed by the drawers to the plaintiffs.

The fourth count is upon a bill of exchange drawn by McAllister & Co., bearing date the 11th day of September, 1854, upon the defendant, for the sum of two thousand dollars, payable to the order of the drawers, sixty days after date, and accepted by the defendant, payable at Wadsworth and Sheldon's, New York, and indorsed by the drawers to the plaintiffs.

The fifth count is upon a bill drawn by McAllister & Co., bearing date the 18th day of September, 1854, upon the defendant, for the sum of one thousand dollars, payable to the order of the drawers, sixty days after date, accepted by the defendant, payable at the office of Wadsworth and Sheldon, New York, and indorsed by the drawers to the plaintiffs.

The common counts are in the usual form.

The defendant pleaded, firstly, the general issue to the whole declaration.

*Secondly*—To the second, third, fourth and fifth counts in the declaration, specially, that previous to the making of said bills in said counts mentioned, to wit: On the 20th day of August, A. D. 1854, at Joliet, in the county of Will, &c., the Merchants' and Drovers' Bank of Illinois was a body corporate created under the statute of the State of Illinois, entitled "An act to establish a general system of banking;" that said Wm. Smith was then and there and still is the president, and the said R. Eaton Goodell the cashier thereof. That said bank being such body corporate, and the plaintiffs president and cashier thereof, it was, to wit, at Joliet aforesaid, on the day aforesaid, corruptly, and contrary to the provisions of the statute of the State of New York, hereinafter set forth, agreed by and between the said bank, by the said plaintiffs, the agents and officers thereof as aforesaid of the one part, and the said McAllister & Co., and the said defendant of the other part, that the said bank should lend and advance to the said McAllister & Co., and to this defendant for the purpose of buying by the parties last named a quantity of grass seed, during the then coming fall, such sums of money as they, the said parties last named, should desire, not exceeding the sum of seven thousand dollars, in manner following, that is to say : in such sums as should from time to time be required by the said McAllister & Co. and the said defendant, for the purpose aforesaid ; and should forbear and give day of payment of said sums to be so lent and advanced at the said bank as aforesaid, and each and every thereof, for the period, to wit, of sixty days upon each, from the time of advancing the same, *and the said sums, to be so advanced were each to be paid in the city and State of New York, reference being had to the laws of said State by said parties in the making of such corrupt agreement,* and that for

the forbearing and giving day of payment of the said sums of money, so to be advanced as aforesaid by the said bank, the said McAllister & Co. and the defendant should give and pay to the said bank as interest, at the rate of twelve dollars for a hundred, for one year upon all the money to be so advanced, by the said bank as aforesaid, besides the difference in exchange between Joliet and New York.

And to secure the repayment of said sums of money so to be lent, the said McAllister & Co., should draw and indorse and the defendant accept a bill of exchange payable in the city of New York, for such an amount as would cover the sum advanced, with the interest, at the rate aforesaid, added ; which draft or bill, so made, drawn, indorsed and accepted, should be delivered to said bank at the time of receiving the money as aforesaid.

The plea alleges the advancing of the money and giving said bills in pursuance of the said agreement, and that the whole amount of money received did not exceed in all the sum of four thousand eight hundred and ninety-five dollars, and that the amount agreed to be received as interest for such loan exceeded the rate of seven dollars for the loan of one hundred for one year. The plea sets out the New York statute, alleges that said bills are void by said statute, and the premise concluding with a verification, &c.

The third plea is likewise to the second, third, fourth and fifth counts of the declaration, which are framed upon the bills payable in New York, and is the same as the foregoing, except that the corrupt agreement is alleged to have been made between the plaintiffs, of the one part, and McAllister & Co., of the other part, to loan by the plaintiffs to McAllister & Co. and the defendant, such sums of money, &c., refers to the usury laws of New York, set out in the second plea, *and alleges that the said money was to be repaid in the city and State of New York, and that the said agreement was made by the parties thereto with reference, in all respects, to the laws of the said State of New York,* and that by virtue of said statute the said bills were wholly void, concluding with a verification, &c.

The fourth plea is to the first count of the declaration, which is based on the bill payable at the Merchants' and Drovers' Bank. It alleges the incorporation of said bank under the general banking law of the State of Illinois, that the plaintiffs were and are the president and cashier of said bank, and as its officers and agents, made an agreement with McAllister & Co. to loan them the sum of nineteen hundred and ninety-one dollars and thirty-three cents, and to give a day of payment thereof, ten days, and the said McAllister & Co., for such loan and forbearance, agreed to pay, and the said bank to receive,

the sum of eight dollars and sixty-seven cents, being at the rate of twelve per centum per annum, and the said McAllister & Co. were to make and indorse, and the said defendant to accept, said bill of exchange as security for the repayment of said sum ; that said sum was received and said bill given in pursuance of said agreement, and that said bill was void by the provisions of said statute, concluding with verification, &c.

The plaintiffs filed replications to said pleas as follows :

To the general issue added the similiter.

To the second plea—1st, denying the usurious agreement.

To said second plea—secondly, protesting that there was no such usurious agreement, &c., and that said bills of exchange in second, third, fourth and fifth counts in said declaration were not respectively made, accepted, and delivered in pursuance of such alleged contract as set forth in said plea, nevertheless say, that such contract was not made, nor were said bills of exchange made, accepted, or indorsed, with reference to the laws of New York, by the several parties in the making of said contracts or writings, or in the accepting, indorsing, or delivering of said several bills of exchange in said plea mentioned, concluding to the country, &c.

And to said second plea—thirdly, protesting, &c., and denying that the bills mentioned were drawn, accepted, indorsed, delivered or given in pursuance of such usurious agreement, or for such usurious considerations, concluding to the country.

And to said second plea—fourthly, protesting, &c., and alleging that said bills of exchange were severally drawn, signed, accepted, indorsed, delivered and given in the State of Illinois, viz. : in the county of Will, aforesaid, and that all and each of the parties to said several bills of exchange, and each of the parties to this suit were then and there residents and citizens of the State of Illinois, and transacting business in said State of Illinois, and that in drawing, accepting, indorsing and delivering said several bills of exchange, reference was had by all the parties thereto, to the laws of the State of Illinois, and not to the laws of the State of New York, all of which said plaintiffs are ready to verify, wherefore, &c.

The same replications were filed to the third plea.

To the fourth plea the plaintiffs replied—

1st. Denying the illegal agreement, and concluding to the country.

2nd. Denying that the bill of exchange, mentioned in the first count of the declaration, was drawn, accepted, indorsed, delivered or received in pursuance of any illegal agreement, and concluding to the country.

The defendant's counsel entered a motion to strike out the

fifth and ninth replications of the plaintiffs, (which are those alleging that the parties contracted with reference to the laws of Illinois, and not those of New York, and concluding with a verification,) which motion the court overruled, and the defendant excepted.

The defendant filed rejoinders to the plaintiffs' replications thus: to the fifth replication alleges, that reference was not had by the said parties, or any thereof, to the laws of the State of Illinois in either the drawing, the indorsing, the delivery, or receiving said several bills of exchange, or either of them, in said plea mentioned in manner and form, &c., but the same were drawn, made, indorsed, accepted, delivered and received by and between said parties with reference to the laws of the said State of New York, concluding to the country, &c.

To the ninth replication, which was the same as the fifth, the same rejoinder as above.

To the replications concluding to the country, the defendant added a similiter.

The cause was tried before the Hon. S. W. RANDALL, Circuit Judge, and a jury, at the December term, 1855, of the Will county Circuit Court.

On the trial the plaintiffs read in evidence to the jury five bills of exchange, drawn by McAllister & Co., and accepted by E. McAllister, three of which were accepted, payable at the office of Wadsworth and Sheldon, New York.

The plaintiffs then offered in evidence four notarial certificates purporting to be made by J. C. Ambler, notary public, New York, and which were in the usual form, having a seal attached, and one of which certificates was attached to each of said bills. The defendant objected to the same being read as evidence. The court overruled the objection, and said papers were read in evidence, and the defendant then and there excepted.

The plaintiffs rested their case.

The defendant then called Archibald McAllister, and said Archibald McAllister, upon the request of the plaintiffs below, was first sworn on his *voire dire*, and testified as follows: "I am a member of the firm of McAllister & Co., (the bills of exchange were then shown to him,) I am one of the drawers and indorsers of these bills. The name of McAllister & Co. was signed by me." The plaintiffs then objected to the witness testifying in this suit. The said witness was then interrogated by the counsel for the defendant and testified as follows: "I have a release, which was executed and delivered to me by the defendant." The defendant's counsel then read said release, which was produced by the witness.

The defendant's counsel then made a statement as follows: The defendant offers this witness to prove that the bills of exchange, given in evidence, were made with reference to the laws of New York, and that they were drawn in pursuance of a contract made with the Merchants' and Drovers' Bank, for the loan of money, by the said bank, to the defendant and McAllister & Co. at twelve per cent. per annum, payable in the city of New York, and as security for such loan, and to prove the facts set out in defendant's pleas. The court excluded said witness, sustaining the objection made by the plaintiffs.

The defendant gave evidence in the cause, tending to prove the issues on his part, and his counsel offered the defendant as a witness, to which the plaintiffs objected, and the court decided that the defendant was not a competent witness, and refused to permit him to testify in the cause, to which ruling the defendant's counsel excepted.

The defendant read in evidence an exemplified copy of so much of the laws of New York, as is material to this case.

After the evidence was closed upon said trial, and before the case was submitted to the jury, the court, without any motion from either party, ordered and directed that the said second and third pleas and replications be stricken out as presenting immaterial issues in the cause, and they were accordingly stricken out, and the defendant then and there excepted.

SIDNEY SMITH and W. K. MCALLISTER, for Appellant.

T. L. DICKEY, and GLOVER and COOK, for Appellees.

SCATES, C. J. The correctness of the order, striking the second and third pleas from the files for immateriality, depends upon the proper application of the principles of the law, which entered into and became part of the contract, within the intent and meaning of the parties. For the *lex loci contractus*, and the *lex loci contractus rei sitæ*, when, respectively applicable, enter into and form part of every civil contract, respecting rights of property, in things, and choses in action, and so of *lex domicilie*, respecting mere personal contracts, such as marriages, &c. This is the general rule, and apparently of great simplicity in the abstract. Its application however, under certain states of facts and circumstances, becomes exceedingly difficult, and is left inextricably confused, by the authorities.

The rule, when properly understood, has its apparent substitutions as well as exceptions. The case before us, as made by the pleas, is an instance of the former. The contracts were made in this State, and the laws of this State would, had the parties

been silent, have become part of the contracts for the construction and meaning of the parties, in ascertaining and fixing their mutual rights and obligations. But parties may substitute the laws of another place or country, than that where the contract is entered into, both, in relation to the legality and extent of the original obligation, and in relation to the respective rights of the parties, for a breach or violation of its terms. This I call a substitution of the laws of another place or government, for those of the place of entering into the contract, and which is noted by the authorities as an exception to the general rule. This is allowed in all civilized countries, and recognized as part of the *jus gentium*, or law of nations, respecting private and personal rights, and in all cases, where the subject matter of the contract is not *malum in se*, immoral, or contrary to the local policy, or dangerous to the peace and good order of the particular community, in which it is sought to be enforced. When parties seek to enforce such obligations, in the courts of the country, whose laws have been adopted as those of the contract, it presents only an ordinary case of jurisdiction to the court, over a contract made under the same laws of the *forum*, and by parties within its jurisdiction. But when the enforcement of the contract is sought in the courts of a country, governed by a different rule than the local or adopted law of that contract, the law governing it has no force or obligation *ex proprio vigore*, in that *forum*, but *ex comitate*, under the general public law, the court will enforce it, giving *extra* territorial effect, to the laws of another government, where it is not dangerous, inconvenient, immoral, nor contrary to the public policy of the local government.

Where the legislature does not define and prescribe the extent of this comity, it must be declared by the courts in each case, governed by precedents, under the general public law.

On examining these, we find numberless cases, with great uniformity, sanctioning the enforcement of contracts made under and sanctioned by the laws of another State, which are not allowed by the laws of the State where suit is brought, or where a different rule prevails.

Thus we find the marriage contract, legally solemnized or dissolved, under one jurisdiction, respected and enforced in another, under whose laws neither the obligation, nor its rescission would have been allowed. And so of the sale of lottery tickets and conduct of lotteries. So it is in relation to express or implied contracts for interest on money. Any rate per cent. sanctioned by the laws of the place where the contract is made, or by the substituted laws of the place where it is to be performed, or paid, will be recognized and enforced in the courts of other governments, whose laws would make

such rate usurious. But there is a jealous vigilance of the courts to detect evasions of the usury laws, and when discovered, courts will withhold any aid to those who make foreign contracts a pretence for exacting usury at home.

The following authorities fully sustain the principles I have laid down. Story Confl. Laws, Secs. 241 to 246, 280 to 282, 299, 304, note 1, 304*a*, 305, 311*a* and note, 312; 2 Parson§on Cont. 94, Sec. 5; 2 Kent Com. 457 to 461 and notes; Byles on Bills (marg.) 314 to 318; *Andrews* v. *Herriott*, 4 Cow. R. 510 and note (*a*), which contains a good summary on this subject. *Sherman et al.* v. *Gassett et al.*, 4 Gil. R. 523; *Robinson* v. *Bland*, 2 Burr R. 1077; *Van Schaick* v. *Edwards*, 2 John. Cas. 355; *Thompson* v. *Ketchum*, 4 John. R. 287; S. C. 8 John. R. 192; *Fanning* v. *Consequa*, 17 John. R. 516; *Sherrill* v. *Hopkins*, 1 Cow. R. 105; *Commonwealth of Kentucky* v. *Bassford*, 6 Hill 528; *Jacks* v. *Nichols*, 1 Seld. R. 183; *Cox and Dick* v. *United States*, 6 Pet. R. 198; *Andrews* v. *Pond et al.*, 13 Pet. R. 77; *Reimsdyk* v. *Kane et al.*, 1 Gallis C. C. R. 374; *Harman* v. *Harman*, 1 Baldw. C. C. R. 130; *Bainbridge & Co.* v. *Wilcocks id.*, 537; *Pecks et al.* v. *Mayo Follett et al.*, 14 Vermt. 36.

In *Pecks et al.* v. *Mayo Follett et al.*, the contract fixed a time and place in Albany, New York, for the payment of the note made in Canada, but no rate of interest was specified. The court assumed or presumed from the place of payment that the parties intended to adopt the laws of New York, in reference to the rate of interest, and accordingly gave seven per cent. And this rule seems to have received the common sanction of American and English courts. See 2 Kent Com. 460, 461 and notes. I do not regard the case of *Depan* v. *Humphreys*, 20 Mast. La. R. 1, as in conflict with the authorities, but sanctioning fully the right of the parties to fix upon the higher rate of interest, where the contract is made in one, and to be executed or paid in another State.

The case before us is precisely like the case in Vermont, in reference to interest, and what laws should govern the contract, except that there the facts were found, here they are averred by the pleas, which also insist, that the interest taken was usurious, and therefore, the statute of New York makes void the contract.

With the consequences we have nothing more to do than to declare the effect of the law, upon the contract, when it is admissible to administer its provisions in our courts. This court has properly declared, it would not administer the mere penal sanctions of a foreign law by forfeitures. 4 Gil. R. 523. But when by those laws the contract itself is void there, it is void here and everywhere, and this court will not enforce here,

even though it might have been valid if made under our law. This principle is, I believe, without exception. Such is the case presented by the pleas, which presented a good defence to the bills of exchange, if true, and the plaintiff should have been allowed to make and insist upon his defence under them. The court erred in striking them from the files, as immaterial.

The notarial certificate of protest is not evidence of that fact, as was ruled in *Bond* v. *Bragg et al.*, *ante*, p. 69, and *Kaskaskie Bridge Co.* v. *Shannon et al.*, 1 Gil. R. 15, in relation to inland bills.

In revising the ruling of the court below, in excluding McAllister, the drawer and acceptor, for incompetency, we must keep in mind that there is a distinction between the law of the contract and the law of the forum. The former will be enforced in our courts as entering into and forming part of the contract of the parties, with the exception that if those laws operate criminally or penally upon the parties, our courts are under no comity to enforce them in this respect. *Sherman et al.* v. *Gassett et al.*, 4 Gil. R. 523. But where the law makes the contract void there, it will in like manner make it void here. But in administering this measure of relief, we do it through our own forms of action, according to our own rules of evidence, and pursuant to our own rules of practice. By these must the disclosure of the fact of usury be made and the defence sustained.

Our law has ever condemned usurious interest. It does not, however, avoid the contract, but forfeits three-fold the amount of usurious interest. Still, this forfeiture is inapplicable to a contract made under and governed by the laws of another State. If, however, we do not, in the true spirit of the law's repugnance to usury, apply the rules laid down for discovery of its own violations, to the discovery of like violations of the usury laws of other States, when sought to be enforced in our courts, we shall be left without any rule especially applicable to this class of cases, not equally applicable to all.

My present impressions are, that the witness is expressly made competent by the seventh section of chapter 54, Rev. Stat. '45, p. 295. Its language is broad and general, embracing the real actors in the usurious transaction, with a view to a full disclosure, whenever the *fact* of usury is put in issue by the pleadings. The tenor of the act does not confine the rule given, to violations of our own laws, but enlarges it to the "fact of usury" being "put in issue" "by the pleadings." Foreign usurers shall find no greater facilities for concealment of their practices, than domestic ones, if resort be had to our courts for remedies, to extort the excess. I understand the rule given there, as a general one for the detection of the fact, by the oath of the debtor,

upon whom the usury has been practiced without regard to the time, place, or laws violated by it, restricted only by the fact, that the creditor be still living, and who also may be heard on oath as a witness to this fact.

It is further noticeable, in confirmation of this view of our own statute, that different courts in the different States have pressed the policy of the usury laws as proper exceptions, to the rule laid down by Lord Mansfield in *Walton* v. *Shelley*, 1 Term R. 296, even should the rule be adopted. *Taylor* v. *Beck*, 3 Rand. R. 323, 324; *Stump* v. *Napier*, 2 Yerg. R. 37.

I must regard that policy of the law for detection and prevention of usury, introduced by recent statute regulation, as paramount to the supposed policy of protecting negotiable paper, by denying the competency of the maker or indorser, to impeach the consideration or validity of notes signed by him. And this brings me to the consideration of the general rule, without respect to the statute rule.

The rule was laid down in *Walton* v. *Shelley*, generally, excluding as incompetent any original party to any contract, which he had signed, to impeach its validity. The general proposition was denied in *Bent* v. *Baker*, 3 Term R. 27, by Lord Kenyon; and Mr. J. Buller, who concurred in laying down the rule, qualified and confined it in this case to negotiable instruments. Afterwards, in 1798, the case was expressly overruled and denied to be law, by the court of King's Bench, in *Jordaine* v. *Lashbrook*, 7 Term R. 602, in which Mr. J. Lawrence, concurring in overruling *Walton* v. *Shelley*, treated usury, gaming and infancy, as exceptions, even should the rule be recognized. It was expressly so ruled in *Smith* v. *Prager*, 7 Term R. 56, in a case of usury. But the Supreme Court of the United States, in *The Bank of the United States* v. *Dunn*, 6 Pet. R. 56, adopt the rule in Shelley's case, as applicable to negotiable notes. Although the remarks of the court are general, the facts of the case, in 6 Pet. R. 56, show a proper case for the application of the rule in Shelley's case, and upon a further distinction upon which some of the States adopt and apply it; and that is to exclude the witness in cases where negotiable instruments have been actually negotiated, and are in the hands of *bona fide* holders, in the due course of trade. See Pennsylvania cases cited below.

Such was the case in 6 Pet. R. 56. So should be understood my approval of the rule in *Lyon et al.* v. *Boilvin*, 2 Gil. R. 637, where I noted one, but did and could not note every exception and distinction to it as a general proposition. I intended to refer to this case in 6 Pet. R. 51, 57, but it was printed as the 9 Pet. by mistake. There is some reason, justice and policy in

support of the rule excluding the maker or indorser of negotiable paper, when he comes to impeach it, after negotiation, in the hands of the innocent purchaser; but this reason will not apply to protect the original parties, while it remains in their hands, or is sued on merely for their use and benefit.

There are many and irreconcilable decisions in the different States. Most of the courts, if not all, have adopted the rule, with qualification, in *Bent* v. *Baker*, confirming it to negotiable instruments; and others alone, to those actually and *bona fide* negotiated. See 1 Greenl. Ev., Secs. 383, 384, and note 1, of last section; 6 Ohio R. 246; 14 Ohio R. 487; 17 John. R. 176; 11 Pick. R. 416; 1 Metcalf R. 416; 2 Dallas R. 196; 2 Binney R. 165; 4 Serg. & Rawl. R. 397. The Pennsylvania rule confines it to negotiated instruments, which were commercially negotiable; and so I might understand the rule in Massachusetts from the cases of *Churchill* v. *Suter*, 4 Mass. R. 162; and *Fox et al., admrs.*, v. *Whitney, admr.*, 16 Mass. R. 120.

On the contrary rule, I have referred to 3 Rand. R. 316, and would add 3 Grattan R. 90, which appears to be a naked judgment the other way. Connecticut repudiates the rule. 1 Conn. R. 265. New Jersey—2 Harrison R. 194.

New York admits the competency of the witness, overruling *Winton* v. *Saidler*, 3 John. Cas. 185, by *Stafford* v. *Rice*, 5 Cowen R. 23, (see id. 153; 3 Wend. R. 416,) and they hold expressly, that the maker is competent to impeach it for usury. *Tuthill* v. *Davis*, 20 John. R. 285; *Bank of Utica* v. *Hillard*, 5 Cow. R. 153; *Truscott* v. *Davis et al.*, 4 Barb. S. C. R. 495.

The authorities are too numerous to pursue them further. I have presented enough to show and sustain the exceptions and distinctions taken, and, I think, to sustain the rule adopted by this court, as embracing all that is demanded by public policy in maintenance of commercial credit; and yet, without trenching upon that other rule of public policy, adopted by positive legislation, to detect and prevent usury, and a similar one to avoid gaming contracts, in the hands of assignees, and judgments and conveyances given in violation of the act. Rev. Stat. 1845, p. 263, Cap. 46. There being a release of plaintiff here, as acceptor, to the witness as drawer, we are of opinion he was competent, while the security remained in the hands of the original party, to prove the fact of usury, independent of the provisions of the statute.

Judgment reversed and cause remanded.

*Judgment reversed.*