Melvin Mell, Plaintiff-Appellant—(Harold Z. Kaplan, Intervenor Plaintiff-Appellant), *v.* Goodbody & Co., Defendant-Appellee.

(No. 56022;

First District (3rd Division)—March 8, 1973.

L. Louis Karton, and Lieb & Rotche, both of Chicago, for appellants.

Petit, Safeblade, Littlejohn &˙ Glass, of Chicago, (Edward Atlas, of counsel,) for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This suit was brought against the defendant, a stock broker, on behalf of the named plaintiffs, stock margin account customers of defendant, and on behalf of a class. It was an action to recover interest and penalty pursuant to the Interest Act (Ill. Rev. Stat. 1967, ch. 74, par. 4), for interest charged in excess of the amount permitted by the Interest Act, as it applies to stock margin accounts with a debit balance of less than $5,000. After considering affidavits filed by defendant, defendant's answers to plaintiffs' interrogatories, and argument by counsel, the trial court granted defendant's motion for summary judgment, and plaintiffs appeal. The affidavits and answers to interrogatories disclose the following facts.

Margin account customers such as plaintiffs are permitted to purchase securities without making payment in full. Such customers pay a certain portion of the purchase price which during the period in question was set at 80% by Federal regulations. The customers pledge collateral to the broker to secure the remainder. The broker pays the full price for the security and customarily makes a charge to the customer for the loan.

Defendant's charge for the loan of the unpaid 20% of the purchase price was designated as "interest" on its bills to customers. This amount exceeded 7% *per annum* between August 12, 1966 and April 19, 1968, and exceeded 8% *per annum* between April 19, 1968 and the time of the suit on the outstanding balance on margin accounts of less than $10,000.

Defendant is a limited partnership organized under the laws of the State of New York and dealing in the security brokerage business. It is a member of all principal security exchanges. Its principal offices are located in New York, but it has three branch offices in the City of Chicago.

During the period in question defendant made a yearly profit of

$85,000 from its one thousand to fifteen hundred Illinois margin account customers. A form agreement was signed by each of these customers establishing the margin account relationship. That agreement provided in part:

> "8. This agreement and its enforcement and performance shall inure to the benefit of yourselves, your successors and assigns, shall be binding upon my personal representatives, shall apply to all such accounts now or hereafter open or reopened, shall be governed by the laws of the State of New York, and shall be subject to all applicable Federal and state statutes and regulations thereunder; * * *."

All purchases for margin account customers of securities on the New York and American exchanges were made in New York, as were most purchases of over-the-counter securities. Principal responsibility for the supervision of margin accounts was in the New York office; central books and records regarding such accounts also were located in New York. Defendant borrowed money from six Illinois banks, but principal borrowings to cover margin accounts were made in New York. Margin customers' collateral was also kept in New York. Monthly customer statements, although verified in Illinois, were mailed directly from New York.

Defendant had both Illinois and Chicago broker's licenses, and, contrary to its written agreement with customers, received payments in Illinois on its margin accounts.

At the time in question, the Illinois Interest Act (Ill. Rev. Stat. 1967, ch. 74, par. 4), provided in part:

> "In all written contracts it shall be lawful for the parties to stipulate or agree that 7% per annum, or any less sum of interest, shall be taken and paid upon every $100 of money loaned or in any manner due and owing from any person to any other person or corporation in the state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided."

The Act went on to exempt certain transactions from the interest limitations. And in 1969 the Act was amended, explicitly exempting from its application interest charged upon margin accounts; however, this subsequent amendment was not in effect during the instant period.

Defendant's motion for summary judgment was based upon five separate and independent grounds: (1) that the transactions were governed by the laws of the State of New York, under which they clearly were not usurious; (2) that even if Illinois law did govern, the transactions were essentially a lending credit and, therefore, not within the purview of the Illinois Interest Act; (3) that even if the Illinois Interest Act did govern, the transactions were business loans, and, therefore, not

usurious; (4) that the right to recover for usury could not be the subject of a class action; and (5) that plaintiff's complaint failed to state a cause of action upon which relief could be granted.

The trial judge found for defendant on all five grounds and allowed its motion for summary judgment. We believe that the transactions in question were governed by the laws of the State of New York, and that the court correctly awarded summary judgment on that basis. We therefore find it unnecessary to consider the other independent grounds for the allowance of judgment.

The securities involved in the instant transactions came within the purview of the Illinois Uniform Commercial Code. (Ill. Rev. Stat. 1967, ch. 26, par. 8—102(1)(a).) Article I, section 105(1) of the Illinois Code, entitled "Territorial Application of the Act; Parties' Power to Choose Applicable Law," provides:

> "(1) Except as provided hereafter in this Section, when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this State.

The Code Comment following this Section defines the test for a "reasonable relationship" to a State as "a significant enough portion of the making or performance of the contract is to occur or occurs [there]."

Long before the adoption of the Code, these conflict of laws principles had been recognized in Illinois. In *McAllister v. Smith,* 17 Ill. 328, our Supreme Court stated at p. 334:

> "But the parties may substitute the laws of another place or country, than that where the contract is entered into, both, in relation to the legality and the extent of the original obligation, and in relation to the respective rights of the parties, for a breach or violation of its terms."

And in *Reighley v. Continental Illinois Nat. Bank and Trust Co.,* 390 Ill. 242, 61 N.E.2d 29, the court, at p. 249, observed:

> "* * * it is permissible for the parties to agree, subject to certain limitation, that the construction of a contract and the validity of the same may be governed and controlled by a law agreed upon between the parties."

In the instant case the brokerage arrangements between the parties bore a "reasonable relationship" to the State of New York, and a "significant enough portion" of the performance occurred there that the choice of law provision in the brokerage agreements was valid and should be given effect. Defendant's primary place of business is in New York;

it is there that the major portion of the securities under the contracts were purchased and sold on the major exchanges. Plaintiffs' collateral was kept in New York; defendant's central records of all its margin accounts were kept in New York; bills on margin accounts were made in New York; and it was in New York that defendant made its principal borrowings to cover its margin accounts. All of this is not to say that there were not also very substantial relationships with Illinois in these brokerage agreements. Yet the numerous and significant contacts with New York clearly satisfy the "reasonable relationship" test applicable in this choice of law situation.

Plaintiffs, however, contend that giving effect to New York law and particularly to the New York usury statute, which permits an interest rate higher than that allowed in Illinois, would violate Illinois public policy. ▪▮▮ It is a well recognized principle in conflict of laws that states will give effect to a foreign law only where such is "not dangerous, inconvenient, immoral, nor contrary to the public policy of the local government." (*McAllister v. Smith,* 17 Ill. 328.) In that case, after noting the above public policy exception, the court, at pp. 334-335, stated:

> "Any rate per cent sanctioned by the laws of the place where the contract is made, or by the substituted laws of the place where it is to be performed, or paid, will be recognized and enforced in the courts of other governments, whose laws would make such rate usurious."

And in *Mumford v. Canty,* 50 Ill. 370, the court stated at p. 375:

> "* * * a contract entered into in another State, and in conformity to their laws, may be enforced, and the rate of interest collected under the contract, according to the laws of that State, although it may be larger than the rate allowed by our laws."

Additionally, the Code Comment following Article I, section 1—105(1) of the Illinois Uniform Commercial Code makes reference to the United States Supreme Court case of *Seeman v. Philadelphia Warehouse Co.,* 274 U.S. 403, as a useful guideline. In that case, the court permitted reference to the law of another State allowing a higher rate of interest than the forum State, and, quoting Wharton's Conflict of Laws, stated at p. 408:

> "Assuming that their real, *bona fide* intention was to fix the situs of the contract at a certain place which has a natural and vital connection with the transaction, the fact that they were actuated in doing so by an intention to obtain a higher rate of interest than is allowable by the situs of some other elements of the transaction does not prevent the application of the law allowing the higher rate."

814

We therefore hold that the application of New York's usury laws in the instant case would not be violative of Illinois public policy, and that the trial court properly found that the transactions in question were governed by the laws of the State of New York. The court correctly granted summary judgment.

For the reasons stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McGLOON, J., concur.