**PEACH TREE BANCARD CORPORATION,**
Plaintiff,

v.

**PEACHTREE BANCARD NETWORK, INC., Defendant.**

No. 88 C 6078.

United States District Court,
N.D. Illinois, E.D.

March 1, 1989.

Francis X. Grossi, Jr., Samuel B. Isaacson, Katten, Muchin & Zavis, Chicago, Ill., for plaintiff.

Robert Marc Chemers, Robert J. Franco, Pretzel & Stouffer, Chartered, Chicago, Ill., for defendant.

## ORDER

ALESIA, District Judge.

On July 11, 1988, Peach Tree Bancard Corporation ("Bancard") filed a two-count complaint against Peachtree Bancard Network, Inc. ("Network") for breach of contract and tortious interference with contractual relations. *See Peach Tree Bancard Corp. v. Peachtree Bancard Network, Inc.*, No. 88–5902 (N.D.Ill. filed July 11, 1988) (*"Peach Tree I"*). The parties negotiated a settlement and agreed to the entry of a consent order which prohibited Network from soliciting, recruiting, inducing or influencing Bancard's agents and independent contractors to alter or terminate their contractual relationships with Bancard. *See* Order of July 14, 1988. This Court retained jurisdiction to enforce the order.

On July 15, 1988, Bancard filed a second complaint against Network. *See Peach Tree Bancard Corp. v. Peachtree Bancard Network, Inc.*, No. 88–6078 (N.D.Ill. filed July 15, 1988) (*"Peach Tree II"*).[1] In *Peach Tree II*, Bancard alleges that Network breached the consent order (count I), breached its Agent Marketing Agreement with Bancard (count II), violated the Franchise Disclosure Act of 1987, Ill.Rev.Stat. ch. 121½, ¶ 1701 *et seq.* (count III) and tortiously converted fees collected by Network and due to Bancard (count IV). *Peach Tree II* also contains a claim for declaratory judgment (count V). With respect to *Peach Tree II*, Bancard filed a motion for injunctive relief and expedited discovery. On August 11, 1988, the motion for a temporary restraining order was denied. *See* Order of August 18, 1988 (Conlon, J.).[2]

On September 16, 1988, Network filed a motion for transfer pursuant to 28 U.S.C. § 1404(a). On October 12, 1988, Bancard filed its response. On October 26, 1988, Network filed its reply. For the reasons stated in this order, Network's motion to transfer is granted.[3]

### Discussion

Pursuant to section 1404(a), a district court may transfer a civil action "[f]or the convenience of the parties and witnesses [and] in the interests of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To meet the requirements of § 1404(a), the movant must establish (1) that venue is proper in the transferor district; (2) that the case initially could have been filed in the transferee district; and (3) that the transfer is for the convenience of the parties and witnesses and in the interest of justice. *Walter E. Heller & Co. v. James Godbe Co.*, 601 F.Supp. 319, 320 (N.D.Ill. 1984). The first and second elements are satisfied as venue is proper in the Northern District of Illinois, where Bancard resides,

1. Network argues that Bancard's timing, i.e., filing its second complaint predicated upon Network's breach of a consent order entered just one day earlier, suggests that Bancard settled *Peach Tree I* as a ruse for obtaining Network's consent to personal jurisdiction. Network argues that, under the facts of this case, the exercise of personal jurisdiction by this Court would violate due process. We do not pass on this argument now. For purposes of the motion to transfer, this Court assumes that the exercise of *in personam* jurisdiction is proper.

2. Network subsequently filed a petition for preliminary and permanent injunctive relief on its counterclaim. After this Court entered an order which continued Network's petition generally, *see* Order of Sept. 9, 1988, Network voluntarily dismissed this petition.

3. District courts have discretion to transfer cases pursuant to 28 U.S.C. § 1404(a) and will be reversed only where the decisions to transfer are so clearly erroneous that such decisions constitute abuses of discretion. *See Macedo v. The Boeing Co.*, 693 F.2d 683, 691 (7th Cir.1982).

and in the Northern District of Georgia, where Network resides. 28 U.S.C. § 1391.[4] We now address the other factors of § 1404(a) which favor transfer.

██ This Court recognizes that the party seeking transfer bears the burden of showing that the transferee forum best serves the interests articulated by 28 U.S. C. § 1404(a). Unless the balance favors transfer, a plaintiff's choice of forum will prevail, *see Magnavox Co. v. Bally Manufacturing Co.*, 414 F.Supp. 891, 892 (N.D. Ill.1976); however, plaintiff's choice of forum is not absolute and will not defeat a well-founded motion to transfer. In this case, Bancard's choice of forum is just one of the factors which this Court weighs when deciding this motion. *See General Accident Insurance Co. v. The Travelers Corp.*, 666 F.Supp. 1203, 1206 (N.D.Ill. 1987); *Associated Mills, Inc. v. Rush–Hampton Industries*, 588 F.Supp. 1164, 1166 (N.D.Ill.1984).

██ The facts presented by each side indicate that each party will experience inconvenience if this litigation proceeds in Illinois or Georgia. Bancard plans to call many of its employees, who are Illinois residents, to substantiate its claims. Likewise, Network will call former Network employees, who reside in Georgia, to substantiate its case. Generally, where particular witnesses are within the control of a particular party, the witnesses likely will appear voluntarily. Such is the case when a party calls its employees as witnesses. When weighing the relative inconveniences to these employees-witnesses, courts are concerned mostly with the time and expense the witnesses incur to attend trial. Bancard argues that, by sheer number, its plans to call eight employees-witnesses entail more expense and inconvenience to the continued operation of Bancard's business than does Network's plans to call three of its former employees at trial. In fact, Bancard argues that Network will suffer no inconvenience if witnesses are required to travel outside of Georgia because Network no longer has a business which can be disrupted, inconvenienced or harmed.[5]

Bancard's argument provides more support for Network's position than for Bancard's own position. Clearly, the former employee-witnesses are not as likely to appear voluntarily on behalf of Network precisely because the witnesses are former employees. Network's witnesses are likely to suffer more inconveniences with respect to their subsequent employers because such employers will not have the same vested interest in the outcome of the litigation that Bancard has. This discussion demonstrates that the conveniences of the parties and witnesses favors no particular forum. Thus, this Court must examine the interest of justice factor to decide this motion.

Transfer of this case to Georgia would advance the interest of justice. The "interest of justice" analysis focuses on the efficient administration of the court system rather than the private considerations of the litigants. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). With respect to this case, three important considerations weigh in favor of transfer to the Northern District of Georgia.

First, this cause of action will be governed by Georgia law. In their Agent Marketing Contract, Bancard and Network expressly provided that "[the] Contract shall be governed by the laws of the State of Georgia...." Illinois courts have long enforced agreements regarding choice of law. *See Sarnoff v. American Home Products, Corp.*, 798 F.2d 1075, 1081 (7th Cir.1986) (citing *McCallister v. Smith*, 17 Ill. 328, 333 (1856)); *Medline Industries, Inc. v.*

**4.** We note that section 1013(a) of the Judicial Improvements and Access to Justice Act, Pub. L.No. 100–702, 102 Stat. 4642 (1988), amended 28 U.S.C. § 1391(c). Effective February 17, 1989, for venue purposes, a corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Venue in the Northern District of Georgia is predicated upon Network's status as a Georgia corporation.

**5.** Sometime after Bancard filed this action, Network sold its merchant base to Union Planters National Bank of Memphis, Tennessee.

*Grubb,* 670 F.Supp. 831, 834 & n. 5 (N.D.Ill. 1987).

Bancard's argument that only "Georgia common law may apply" is meritless. Bancard can point to no language which would support this argument. The express language calls for the application of the "laws of the State of Georgia." The term "laws" clearly contemplates that Georgia common law and statutory law would govern the rights and obligations of Bancard and Network. Similarly, Bancard argues that "Illinois law is more heavily involved in this dispute than Georgia law." In support of this argument, Bancard directs this Court's attention to the fact that both Bancard and Network have pleaded Illinois statutory causes of action. This argument must fail also. What law governs the substantive rights and liabilities of the parties is not determined by the complaint or the counterclaim. In diversity actions, *in the absence of an agreement fixing the substantive law,* the court must apply the substantive law suggested by the forum state's conflict of laws rules. *See Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Sarnoff,* 798 F.2d at 1080; *Medline,* 670 F.Supp. at 834. Here, the parties have agreed that Georgia law governs their dispute. Bancard argues that even if this Court were to find that Georgia law applies, this finding does not support transfer because "Georgia's common law on claims for breach of contract or interference with contractual relationships [is not] complex or unsettled." Thus, according to Bancard, this Court would be as able to apply Georgia law as a Georgia federal court. Bancard's argument is weakened by its desire to have this Court, which "is infinitely more familiar with Illinois public policy than any court in Georgia[,]" decide the statutory claims. While much of the law which applies to this action may not be complex,[6] we believe that the district court for the Northern District of Georgia will be more readily familiar with the applicable law.

■ Second, we believe that the parties will receive a speedier resolution of their dispute in the Northern District of Georgia. Courts in this district recognize that the Northern District of Illinois consistently ranks among the most congested of district courts nationally. *See Letter–Rite, Inc. v. Computer Talk, Inc.,* 605 F.Supp. 717, 722 (N.D.Ill.1985). Approximately 12,000 new cases are filed in the Northern District of Illinois each year. In contrast, approximately 4,000 new cases are filed in the Northern District of Georgia. *See* Federal Court Management Statistics at 101, 163 (1987). Clearly, these parties are likely to receive a speedier resolution to their dispute in the Northern District of Georgia. This possibility unequivocally favors transfer. *See Coffey,* 796 F.2d at 221.

Finally, Bancard argues that transfer will impair the maintenance of sound judicial administration and the proper conservation and utilization of judicial resources. This will occur because, according to Bancard, this "Court is fully familiar with the litigation[.]" This familiarity is based on the entry of a consent order in *Peach Tree I.*[7] *Peach Tree I* was pending a mere three days before the parties settled their dispute and agreed to enter into a consent order. The consent order required that Network discontinue its solicitation or recruitment of Bancard's agents or independent contractors. Contrary to Bancard's assertions, this Court's familiarity with the underlying dispute is not of such an extensive nature as to preclude transfer. Because *Peach Tree I* is no longer pending, there is no possibility that the district court for the

---

6. Network does argue that the doctrines of res judicata and collateral estoppel apply to the subsequent suit (*Peach Tree II*). Bancard disagrees. The language of the consent order entered in *Peach Tree I* lends some support to each party's view. The order states that the "parties ... agreed upon the disposition of all the issues in the above styled action[.]" The parties then "expressly preserve[d] all rights and claims against each other other then [sic] those alleged in the subject complaint[.]" With the injection of the res judicata/collateral estoppel issues, Bancard's assertion that there are no complex issues appears doubtful.

7. Contrary to Bancard's belief, *Peach Tree I* is no longer an active, pending case.

Northern District of Georgia will perform duplicative work or enter orders inconsistent with the consent order entered in this case. In fact, because Network sold its marketing base, there is no possibility that Network will continue its alleged breach of the consent order in the future. To the extent that Bancard seeks damages for the alleged breach, that damage action can proceed with their other damage claims in *Peach Tree II*. Finally, any money judgment that Bancard obtains must be enforced in Georgia. Thus, transfer of this action will not impair the efficient administration of the court system or waste judicial resources.

### *Conclusion*

For the reasons stated in this order, defendant Peachtree Bancard Network, Inc.'s motion to transfer pursuant to 28 U.S.C. § 1404(a) is granted. This case is transferred to the United States District Court for the Northern District of Georgia, Atlanta Division.

IT IS SO ORDERED.