2025 IL App (1st) 241488-U

No. 1-24-1488

Order filed February 4, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOSEPH MORGAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | 23CH7073 |
| | ) | |
| SILVER FINANCIAL CAPITAL, INC., | ) | Honorable |
| | ) | Allen Price Walker, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court's denial of motion to vacate arbitration award affirmed where the arbitrator did not exceed his authority.

¶ 2    Plaintiff, Joseph Morgan, appeals the circuit court's denial of his motion to vacate an arbitrator's decision in favor of defendant, Silver Financial Capital, Inc. (Silver).

¶ 3    The record shows that Silver, a Delaware corporation with its principal place of business in Utah, is a consumer lender offering loans online through its website. In April 2022, Morgan, an Illinois resident, completed an application on Silver's website for a $1000 short term consumer

loan. The loan agreement entered by the parties provided that Silver would finance a $1000 loan to Morgan, who would make biweekly payments to Silver over the course of approximately six months. The loan agreement further provided that the total finance charge for the loan was $1426, and the annual percentage rate (APR) for the loan was 482.6197%. The agreement also provided that it was "deemed to be made in the State of Utah," that it was "governed by the laws of the state of Utah" when funded. The loan agreement contained an arbitration agreement, reiterating that "the law of the State of Utah will govern this Agreement," and that "any dispute arising out of" the loan agreement would be subject to an arbitration agreement, governed by the Federal Arbitration Act (FAA). Morgan agreed that "any claims that directly or indirectly arise from [the] Loan Agreement" would be resolved "in binding and mandatory arbitration."

¶ 4    On June 23, 2022, Morgan filed a demand for arbitration, acknowledging that the loan agreement entered by the parties contained an arbitration clause and seeking to "submit the following dispute to final and binding arbitration." Morgan alleged that the loan agreement between him and Silver was "predatory and unlawful" and that the interest rate charged exceeded the amount allowed by Illinois law. Morgan sought a declaratory award that the loan was void, damages pursuant to the Illinois Interest Act, (815 ILCS 205/6 (West 2022)), and damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, (815 ILCS 123/15-1-1 et seq. (West 2022)).

¶ 5    On April 11, 2023, Silver filed a motion to dismiss Morgan's claims. Silver alleged that the executed loan agreement contained "multiple recitations that Utah law applies to the Loan Agreement and any claims related to it." Silver maintained that the parties' choice of law is given effect unless it would violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state. Silver argued that enforcing the contract's Utah's

choice of law provision did not offend Illinois public policy because he could still seek redress of claims in arbitration under Utah law, and that Illinois did not have a materially greater interest in the litigation because

> "Silver is licensed by the state of Utah and is subject to the regulation of and audit by the Utah Department of Financial Institutions–as the Loan Agreement expressly makes clear. [Morgan] knowingly reached out to a Utah lender to obtain his loan, and his Loan Agreement clearly and repeatedly specifies that Utah law appl[i]es."

¶ 6    Accordingly, Silver argued that the parties' choice of law controlled, that the arbitrator was required to apply Utah substantive law to Morgan's claims, and that Morgan's claims should be dismissed as they were based solely on Illinois law.

¶ 7    Morgan responded to Silver's motion to dismiss on May 3, 2023.  Among other things, Morgan asserted that the Predatory Loan Prevention Act applied by its terms to "any person or entity that offers or makes a loan to a consumer in Illinois" and that the Act "expressly negated the ability of consumers to waive the protections" of the Act. Accordingly, Morgan maintained that "a choice of law clause that has the effect of making the Act inapplicable is both a prohibited waiver or evasion of the Act and invalid as contrary to public policy." Morgan cited the United States Supreme Court case of *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022), for the statement that an "arbitration agreement *** does not alter or abridge substantive rights," and contended that there was "no basis for disregarding controlling Illinois statutory law."

¶ 8    The arbitrator heard oral argument on May 31, 2023, and entered an order granting Silver's motion to dismiss on June 30, 2023. The arbitrator explained that there was no dispute that the subject loan agreement contained an arbitration clause which gave the arbitrator authority to decide the matter. The arbitrator concluded that the choice of law provision in the contract applied to

govern Morgan's claims, that no public policy exception existed to modify that choice of law, and, accordingly, Illinois law did not apply. The arbitrator specifically found that *Viking River Cruises, Inc.*, 596 U.S. 639 (2022) was "not on point" because it "dealt with federal pre-emption of a California state law." The arbitrator noted that his authority arose,

> "not from state or federal law, but from the parties in their arbitration agreement. The arbitrator is bound by their choice of law. The arbitrator finds that the terms of the arbitration agreement control and he must apply Utah law. Therefore, because [Morgan]'s Statement of Claim is based on Illinois law, [Silver]'s motion to dismiss is granted."[1]

¶ 9    On August 2, 2023, Morgan filed a motion to vacate the arbitration award in the circuit court. Morgan alleged that, under *Viking River Cruises, Inc.*, 596 U.S. 639, an arbitration clause does not deprive a plaintiff of any "substantive statutory rights." Morgan asserted that applying Utah law effectively waived Morgan's statutory rights under the Predatory Loan Prevention Act, "which cannot be enforced under Illinois law and the FAA." Morgan contended that the "arbitrator exceeded his authority by refusing to follow" *Viking River Cruises, Inc.* Morgan also contended that an arbitration award could be vacated if "enforcement of the award would violate public policy." Morgan stated that it would violate Illinois public policy to "allow a lender to avoid the prohibition of the [Predatory Loan Prevention Act] by inserting in the form contracts signed by necessitous borrowers an arbitration clause and a choice of law clause selecting the law of a state that does not cap interest rates."

---

[1] Thereafter, Silver filed a motion for award of arbitration fees. The arbitrator entered a final order on October 23, 2023, denying Silver's motion.

¶ 10    Silver responded to Morgan's motion to vacate the arbitration award on May 29, 2024. Silver asserted that the arbitrator correctly concluded that his power stemmed solely from the parties' arbitration agreement which provided that Utah law governed any disputes, and that the "public policy exception" to vacate an arbitration award was limited to cases involving collective bargaining agreements.

¶ 11    On July 19, 2024, the circuit court entered an order denying Morgan's motion to vacate the arbitration award. The court agreed with the arbitrator that he "gets his authority, not from state or federal law, but from the parties in their arbitration agreement," and found "no basis to apply the public policy exception to arbitration agreement." The court further found that the "arbitrator was bound by the choice of law that was stated in the arbitration agreement," and that "Utah law governs." Nonetheless, the circuit court noted that it could only vacate an arbitration award where "the arbitrator exceeds their powers," and "even if the arbitrator incorrectly applied the law, his alleged error does not rise to the level of exceeding his powers."

¶ 12    Morgan filed a timely notice of appeal from that order.  In this court Morgan maintains that the arbitrator's decision must be vacated because his rights under the Predatory Loan Prevention Act are "non-waivable," and the United States Supreme Court decision of *Viking River Cruises, Inc.,* 596 U.S. 639 (2022) provides that "an arbitration agreement that purports to waive non-waivable statutory rights *** is invalid and unenforceable." Morgan also contends that the arbitrator "exceeded his authority" by issuing an award that "declares valid and enforceable a loan declared void by the Predatory Loan Prevention Act," by "refusing to follow" the *Viking River Cruises, Inc.* decision, and by "issuing an award that violates a party's non-waivable statutory rights." Finally, Morgan contends that the arbitration award violates public policy, and should be vacated on that basis.

¶ 13    It is well established that judicial review of an arbitrator's decision is extremely limited. *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 254 (1988). The award must be construed as valid whenever possible. *Id.* " 'Limited judicial review fosters the long-accepted and encouraged principle that an arbitration award should be the end, not the beginning of litigation.' " *Yorulmazoglu v. Lake Forest Hospital,* 359 Ill. App. 3d 554, 564 (2005), quoting *Perkins Restaurants Operating Co. v. Van Den Bergh Foods, Co.,* 276 Ill. App. 3d 305, 309 (1995). " 'When parties agree to submit a dispute to arbitration for a binding and nonappealable decision, they bargain for finality.' " *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 48 (2009), quoting *Yorulmazoglu,* 359 Ill. App. 3d at 564. "The point of arbitration is to provide a quick and economical alternative to litigation, not to add yet another round before entering the district and appellate courts." *First Health Group Corp.*, 393 Ill. App. 3d at 48.

¶ 14    The parties agree that the Federal Arbitration Act governs this matter, as set out in the parties' agreement.  Under the FAA, a reviewing court can vacate or modify an arbitration award in the following limited circumstances:

> "(1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10 (West 2022).

¶ 15     Here, Morgan invokes only the fourth ground as the basis to vacate the arbitration award, asserting that the arbitrator exceeded his power.

¶ 16     Arbitrators "derive their "powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.' " *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019), quoting *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U. S. 662, 682 (2010); see also *Village of Posen v. Illinois Fraternal Order of Police Labor Council*, 2014 IL App (1st) 133329, ¶ 37. "On judicial review, there is a presumption the arbitrator did not exceed his authority." *Decatur Police Benevolent and Protective Association Labor Committee v. City of Decatur*, 2012 IL App (4th) 110764, ¶ 21.   An arbitrator exceeds his authority when he decides matters that were not submitted to him for resolution. *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 419 (1979) (*District No. 508*). Further, the scope of an arbitrator's power is dependent upon what the parties agreed to submit to arbitration. *Id.* Because the parties agreed to have disputes settled through arbitration, the court may not overrule an award simply because it would interpret the contract differently. *Everen Securities, Inc. v. A.G. Edwards and Sons, Inc.*, 308 Ill. App. 3d 268, 273 (1999).

¶ 17     As an initial matter, we note that the posture of this case is very different from most of the authority invoked by Morgan. In those cases, the validity of an arbitration agreement, and the arbitrability of the dispute, was in question. Here, by contrast, Morgan filed a demand for arbitration, seeking to submit his dispute "to binding arbitration."

7

¶ 18    For example, in *Viking River Cruises, Inc.*, 596 U.S. 639, a former employee filed an action against her former employer, alleging both individual and representative violations of the California Labor Code Private Attorneys General Act (PAGA). The employer, however, moved to compel arbitration, asserting that the parties' contract contained an arbitration clause. The employee argued, and the trial and appellate court agreed, that the arbitration clause was invalid under a California Supreme Court case invalidating contractual waivers of the right to bring representative claims under PAGA. The United States Supreme Court, however, concluded that the FAA preempted that California Supreme Court decision, that the former employer was entitled to enforce the arbitration agreement insofar as it mandated arbitration of former employee's individual PAGA claim, and that the former employee lacked statutory standing to maintain the representative PAGA claims.

¶ 19    Here, however, *Viking River Cruises, Inc.*, 596 U.S. 639 does not apply, as Morgan has never challenged the validity of the arbitration agreement or disputed the arbitrability of the questions brought before the arbitrator. Morgan demanded arbitration over his claims that the loan agreement violated Illinois law. Moreover, when Silver moved to dismiss those claims based on the parties' contractual choice of law, Morgan never disputed the arbitrator's authority to resolve that question.

¶ 20    Morgan, however, contends that the arbitrator "exceeded his powers" by "issuing an award that declares valid and enforceable a loan declared void by the Predatory Loan Prevention Act" and holding "that an agreement made illegal by statute should be given effect." Although the arbitrator dismissed Morgan's claims on the basis that the arbitrator was "bound by [the parties'] choice of law" in the arbitration agreement, the question resolved by the arbitrator was not whether the loan agreement was "valid and enforceable" or if it "should be given effect." Rather, the

arbitrator resolved which state's law applied under the parties' arbitration agreement, a question that was clearly within the arbitrator's authority to answer.

¶ 21 Moreover, the arbitrator's decision to apply Utah law, as provided in the parties' loan agreement, is well-supported. In general, "an express choice of law provision contained in a contract will be given effect subject to certain limitations." *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 757–58 (1987), citing *Reighley v. Continental Illinois National Bank & Trust Co.*, 390 Ill. 242, 249 (1945). A court should give effect to a contractual choice-of-law provision unless the contract chooses a foreign law that is "dangerous, inconvenient, immoral, [or] contrary to the public policy of the local government." *Potomac Leasing Co.*, 156 Ill. App. 3d at 757-58). When comparing two state's laws, "the public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties." *Id*. at 759.

¶ 22 More than 150 years ago, our supreme court was faced with a similar question as the one posed in this case. In *McAllister v. Smith,* 17 Ill. 328 (1856), the Illinois supreme court considered an agreement between a foreign lender and an Illinois borrower. The contract contained a choice of law provision declaring that the usury laws of New York would govern the contract. Although the interest rates sanctioned by the New York law were higher than those permitted by the comparable Illinois usury law, the court upheld the choice of law provision expressed by the parties, finding "numberless cases, with great uniformity, sanctioning the enforcement of contracts made under and sanctioned by the laws of another State, which are not allowed by the laws of the State where suit is brought, or where a different rule prevails." *Id.* at 334. The supreme court explicitly found that "[a]ny rate per cent[ ] sanctioned by the laws of the place where the contract is made, or by the substituted laws of the place where it is to be performed, or paid, will be recognized and enforced in the courts of other governments, whose laws would make such rate

9

usurious." *Id.* at 334-25.

¶ 23    Our courts have also repeatedly found that it does not violate public policy to enforce an agreement to apply another state's laws, even when the other state permits interest at a rate higher than that allowed in Illinois. See *id.*; *Mumford v. Canty*, 50 Ill. 370, 375 (1869) ("a contract entered into in another State, and in conformity to their laws, may be enforced, and the rate of interest collected under the contract, according to the laws of that State, although it may be larger than the rate allowed by our laws."); *Mell v. Goodbody & Co.*, 10 Ill. App. 3d 809, 814 (1973) ("application of New York's usury laws in the instant case would not be violative of Illinois public policy"). Accordingly, we find no basis to override the parties' choice of law.

¶ 24    We also note that Morgan is not without recourse under the law he agreed to. Morgan contends that Utah law does not limit interest rates, citing Utah Code Ann. § 70C-2-101—"parties to a consumer credit agreement may contract for payment by the debtor of any finance charge and other charges and fees." He omits, however, the introductory portion of that sentence—"Except where restricted or otherwise covered by provisions of this title." In particular, Utah law provides that a court may refuse to enforce an unconscionable contract in whole, or in part by removing the unconscionable clause. Utah Code Ann. § 70C–7–106(1) (2009); see also *Knight Adjustment Bureau v. Lewis*, 228 P.3d 754, 756 (Utah 2010); *Sosa v. Paulos,* 924 P.2d 357, 359 (Utah 1996). And where a Utah court finds the consumer credit agreement to be unconscionable, the court may impose a penalty between $100 and $5000, plus attorney fees. Utah Code Ann. § 70C–7–106(4) (2009). Having agreed that Utah law, including the above provisions, governs any disputes under the loan agreement, we agree with the arbitrator that Morgan cannot raise claims solely based on Illinois law.

¶ 25    Moreover, even if we did find that the arbitrator made an error of law in determining that

Utah law applied, "[a]n error of law does not provide a basis for overturning an arbitration decision." *Munizzi v. UBS Financial Services, Inc.*, 2021 IL App (1st) 201237, ¶ 46. "[A]n arbitration award will not be overturned or set aside because it is illogical, inconsistent, or contains errors in judgment or a mistake of law or fact." *Beatty v. Doctors' Co.*, 374 Ill. App. 3d 558, 563 (2007) (citing *Galasso v. KNS Cos.*, 364 Ill. App. 3d 124, 130 (2006)). Because the parties bargained to have their disputes settled by an arbitrator, and not a judge, and they agreed to have the arbitrator decide Morgan's Illinois law claims, including whether the contract's choice of law provision applied, we do not disturb the arbitrator's decisions on those issues. *Ismie Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC*, 397 Ill. App. 3d 964, 970 (2009) ("Even if the appellate court determines that the arbitrator made an error in judgment on a legal issue, that error does not create grounds for vacating an arbitrator's decision when the interpretation of the law is entrusted to the arbitrator."). As the United States Supreme Court has stated, and our supreme court has endorsed:

> " 'Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of the litigation.' " *Garver v. Ferguson,* 76 Ill. 2d 1, 9 (1979), quoting *Burchell v. Marsh,* 58 U.S. 344, 349 (1854).

11

¶ 26    Morgan further asserts that an arbitrator exceeds his power when he "appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." This argument implicates the "manifest disregard of the law" standard, which provides that a court may vacate an arbitration award where it is shown that the arbitrator deliberately disregarded what they knew to be the law. *TruServ Corp. v. Ernst & Young, LLP*, 376 Ill. App. 3d 218, 225 (2007) ("an arbitration award may be subject to vacatur for misapplication of the law where it is shown that the arbitrators deliberately disregarded what they knew to be the law.")

¶ 27    As the appellate court has previously noted, the "manifest disregard of the law" standard provides an "almost nonexistent standard of review" that is "virtually impossible to meet." *Tim Huey Corp. v. Global Boiler & Mechanical, Inc.*, 272 Ill. App. 3d 100, 106 (1995).

> "[T]o vacate an arbitration award for manifest disregard of the law, there must be something beyond and different from mere error in law or failure on the part of the arbitrators to understand or apply the law; it must be demonstrated that the majority of arbitrators deliberately disregarded what they knew to be the law in order to reach the result they did." (Citations omitted) *Id*. at 107.

¶ 28    Even assuming that the arbitrator resolved the question erroneously—that Morgan's characterization of the law is accurate and that under *Viking River Cruises, Inc.,* the arbitrator should have found that Morgan "had a non-waivable right to void the *** loan under the [Predatory Loan Prevention Act] and other Illinois statutes"—there is no evidence that the arbitrator's decision was based on a deliberate disregard of the law. To the contrary, in ruling in favor of Silver, the arbitrator explicitly considered Morgan's arguments under *Viking River Cruises, Inc.*, but found the case to be inapplicable. The decision does not evidence a deliberate disregard of the law,

but rather the arbitrator's interpretation of the language of the agreement within the context of what he understood the law to be.

¶ 29    Finally, Morgan contends that the arbitration award should be vacated because it "violates public policy" as set out in the Predatory Loan Prevention Act. Because we previously found no violation of public policy in enforcing the choice of law provision in the parties' loan agreement, we need not consider this argument further.

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31    Affirmed.